Jonathan S. Henes, P.C.
Joshua A. Sussberg, P.C.
George Klidonas
Natasha Hwangpo
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

James H.M. Sprayregen, P.C.
Melissa N. Koss
Gregory F. Pesce (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Proposed Counsel to Cenveo, Inc., et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CENVEO, INC., *et al.*,[1] | ) | Case No. 18-22178 (RDD) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

**MOTION OF CENVEO, INC., *ET AL.*,**
**FOR ENTRY OF INTERIM AND FINAL ORDERS**
**AUTHORIZING, CENVEO TO (I) PAY PREPETITION EMPLOYEE**
**WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE**
**EMPLOYEE EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS**

Cenveo, Inc. and the other above-captioned debtors and debtors in possession (collectively, "Cenveo") respectfully state the following in support of this motion (the "Motion"):[2]

[1] The last four digits of Cenveo, Inc.'s tax identification number are 0533. Due to the large number of debtor entities in these chapter 11 cases, for which Cenveo has requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of Cenveo's proposed claims and noticing agent at https://cases.primeclerk.com/cenveo. The location of Cenveo's service address for purposes of these chapter 11 cases is: 777 Westchester Avenue, Suite 111, White Plains, New York 10604.

[2] A detailed description of Cenveo and its business, and the facts and circumstances supporting this Motion and Cenveo's chapter 11 cases, are set forth in greater detail in the *Declaration of Ayman Zameli, Chief Restructuring Officer and Executive Vice President at Cenveo, Inc., (I) in Support of Chapter 11 Petitions and First Day Pleadings, and (II) Pursuant to Local Bankruptcy Rule 1007-2* (the "First Day Declaration"), filed contemporaneously with Cenveo's voluntary petitions for relief filed under chapter 11 of title 11 of the United

## Relief Requested

1. Cenveo seeks entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"), authorizing Cenveo to (a) pay prepetition wages, salaries, other compensation, and reimbursable employee expenses and (b) continue employee benefits programs in the ordinary course, including payment of certain prepetition obligations related thereto. In addition, Cenveo requests a final hearing be scheduled by the Bankruptcy Court (as defined below) within approximately 25 days of the Commencement Date to consider approval of this Motion on a final basis.

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012. Cenveo confirms its consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a), and 541(b)(1) of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

---

States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), on February 2, 2018 (the "Commencement Date").

## Background

5. Cenveo, together with its non-debtor affiliates, is one of the largest printing business enterprises in North America and a global leader in manufacturing and fulfillment of envelopes, labels, print, and related communication resources. Founded in 1919, Cenveo's portfolio of products includes printed labels, envelopes, and print related products. Cenveo serves its customer base from its corporate headquarters in Stamford, Connecticut, its production facilities in approximately 20 states, and its content business in India. Cenveo generated gross revenue of approximately $1.359 billion for the fiscal year ending December 30, 2017.

6. On the date hereof, Cenveo filed voluntary petitions for relief under the Bankruptcy Code. Cenveo is operating its business and managing its properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated. Additional information regarding Cenveo and its prepetition operations and capital structure is set forth in the First Day Declaration, filed in connection therewith.

## Cenveo's Workforce

7. As of the Commencement Date, Cenveo employed approximately 5,200 employees, including approximately 5,100 full-time employees (collectively, the "Full-Time Employees")[3] and approximately 100 part-time employees (collectively, the "Part-Time Employees" and, together with the Full-Time Employees, collectively, the "Employees"). As of the Commencement Date Cenveo is party to 17 unexpired collective bargaining agreements (the "CBAs") with respect to approximately 1,535 unionized Employees (the "Represented

[3] Full-Time Employees are generally scheduled to work 40 hours per week.

Employees"). The Employees perform a wide variety of functions which will be critical to Cenveo's go-forward business operations and the administration of these chapter 11 cases. In many instances, the Employees include personnel who are intimately familiar with Cenveo's businesses, processes, and systems, who possess unique skills and experience to the core business segments of Cenveo, and/or who have developed relationships with wholesalers and distributors that are essential to Cenveo's business. Without the continued, uninterrupted services of the Employees, the ability of Cenveo to maintain and administer its estates will be materially impaired.

8. In addition to the Employees, as of the Commencement Date, Cenveo retained from time to time specialized individuals as independent contractors (collectively, the "Independent Contractors") to complete discrete projects, as well as temporary workers (collectively, the "Temporary Staff") from several staffing agencies (collectively, the "Staffing Agencies"), to fulfill certain duties, including customer service, packaging, and shipping functions. As of the Commencement Date, Cenveo retained approximately 1,030 Independent Contractors and Temporary Staff in the aggregate.

9. The Employees, Independent Contractors, and Temporary Staff rely on their compensation and benefits to pay their daily living expenses. These individuals could experience significant financial constraints if the Bankruptcy Court does not permit Cenveo to continue paying their compensation and providing them with health and other benefits. Accordingly, Cenveo respectfully submits that the relief requested herein is necessary and appropriate under the facts and circumstances of these chapter 11 cases.

## Employee Compensation and Benefits

10. By this Motion, Cenveo seeks authority to: (a) pay and honor certain prepetition claims relating to, among other things, wages, salaries, and other compensation, payroll services, federal and state withholding taxes and other amounts withheld (including garnishments,

Employees' share of insurance premiums, and taxes), reimbursable expenses, health insurance, workers' compensation benefits, life insurance, short- and long-term disability coverage, relocation benefits, paid time off, COBRA benefits, 401(k) plan contributions, and certain other benefits that Cenveo has provided in the ordinary course (collectively, the "Employee Compensation and Benefits"); and (b) pay all costs related to or on account of the Employee Compensation and Benefits.

11. Subject to court approval, Cenveo intends to continue its applicable prepetition Employee Compensation and Benefits in the ordinary course. Out of an abundance of caution, Cenveo further requests confirmation of its right to modify, change, and/or discontinue any of its Employee Compensation and Benefits and/or to implement new programs, policies, and benefits in the ordinary course of business on a postpetition basis during these chapter 11 cases in Cenveo's sole discretion and without the need for further Court approval, subject to applicable law.

12. To the extent that any amounts owed to any Employees on the Commencement Date will exceed the statutory cap of $12,850 set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code Cenveo seeks approval to pay any such amounts solely pursuant to the Final Order.

## I. Employee Compensation and Withholding Obligations

### A. Unpaid Compensation

13. In the ordinary course, Cenveo has incurred obligations to its Employees for, among other things, salaries, wages, overtime, and other similar obligations (collectively, the "Employee Compensation"). Cenveo pays its Employees on a monthly, bi-weekly, and weekly basis, which accrue on either a salaried or hourly basis. Cenveo's average bi-weekly gross Employee Compensation, including salaries, wages, and related compensation, has been approximately $11.5 million for the Employees. The majority of Cenveo's payroll is made by

direct deposit through electronic transfer of funds to the Employees' bank accounts or other electronic means.

14. As of the Commencement Date, certain prepetition wage obligations are due and owing on account of certain hourly workers owed in arrears. Further, certain Employees may be entitled to unpaid compensation due to (a) discrepancies that may exist between the amounts actually paid by Cenveo and the amounts that Cenveo was required to pay and (b) some checks issued to Employees before the Commencement Date may not have been presented for payment, or may not have cleared Cenveo's banking system and, accordingly, may not have been honored and paid as of the Commencement Date.

15. As of the Commencement Date, Cenveo estimates that it owes approximately $3.3 million on account of accrued but unpaid Employee Compensation (the "Unpaid Compensation"). Accordingly, Cenveo respectfully requests that the Bankruptcy Court authorize it to continue such programs and policies and to pay any prepetition or postpetition claims with respect thereto, in each case, in the ordinary course of business on a postpetition basis.

**B. Unpaid Commissions (Final Order Only)**

16. In the past, Cenveo has paid sales-based commissions to approximately 201 Employees engaged as sales associates. These Employees market Cenveo's products under certain incentive policies, including the Envelope Incentive Plan, the Print and Label Commission Plan, and policies tailored towards individual offices. Generally, these Employees receive commission payments in variable percentages based on the amount of product sold through their efforts (the "Commissions"). The Commissions form an important part of many of such Employees' overall compensation packages and motivate such Employees to maintain customer goodwill of Cenveo's estates. Additionally, many of the Employees rely on the Commissions for their daily living expenses such that failure to pay such Commissions would impose undue hardship.

17. As of the Commencement Date, Cenveo estimates that it owes approximately $5.2 million on account of accrued but unpaid Commissions (the "Unpaid Commissions"). Accordingly, Cenveo respectfully requests that the Bankruptcy Court authorize Cenveo to continue such programs and policies and to pay any prepetition or postpetition claims with respect thereto, in each case, in the ordinary course of business on a postpetition basis.

**C. Independent Contractors and Temporary Staff Compensation**

18. As of the Commencement Date, Cenveo estimates that Independent Contractors and Temporary Staff are owed an aggregate of approximately $3 million on account of services rendered prior to the Commencement Date (the "Unpaid Contractor and Temporary Staffing Amounts"). These Independent Contractors and Temporary Staff perform a wide range of services critical to Cenveo's operations, including, among other things, customer service, packaging, and shipping functions. The Employees rely on the support of the Independent Contractors and Temporary Staff to complete certain tasks in furtherance of Cenveo's businesses. Cenveo believes the authority to continue paying its Independent Contractors and Temporary Staff is critical to maintaining and administering its estates. Accordingly, Cenveo respectfully requests that the Bankruptcy Court authorize Cenveo to continue such programs and policies and to pay any prepetition or postpetition claims with respect thereto, in each case, in the ordinary course of business on a postpetition basis.

**D. Withholding Obligations and Payroll Taxes**

19. During each applicable payroll period, Cenveo routinely deducts certain amounts from Employees' paychecks, including garnishments, child support, and similar deductions, as well as other pre-tax and after-tax deductions payable pursuant to certain employee benefit plans discussed herein, such as an Employee's share of healthcare benefits and insurance premiums, 401(k) contributions, legally ordered deductions, and miscellaneous deductions (collectively,

the "Deductions"), and forward such amounts to various third-party recipients. Cenveo only retains payments related to the Employee's share of health care benefits and insurance premiums.

20. In addition to the Deductions, certain federal and state laws require that Cenveo withhold certain amounts from Employees' gross pay related to federal, state, and local income taxes, as well as Social Security and Medicare taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, or local taxing authorities. Cenveo must then match the Employee Payroll Taxes from its own funds and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance and Social Security and Medicare taxes (the "Employer Payroll Taxes" and, together with the Employee Payroll Taxes, the "Payroll Taxes"). The Payroll Taxes are generally processed and forwarded to the appropriate federal, state, and local taxing authorities at the same time as the Employees' payroll checks are disbursed.

21. As of the Commencement Date, Cenveo estimates that it owes approximately $1.1 million on account of the Deductions and the Payroll Taxes (collectively, the "Withholding Obligations"). Accordingly, Cenveo respectfully requests that the Bankruptcy Court authorize Cenveo to continue such programs and policies and to pay any prepetition or postpetition claims with respect thereto, in each case, in the ordinary course of business on a postpetition basis.

**E. Payroll Processing**

22. Certain Withholding Obligations for Cenveo's Employees are processed and administered by Automatic Data Processing, Inc. ("ADP"). As of the Commencement Date, Cenveo estimates it owes approximately $6,000 to ADP on account of prepetition payroll services (the "Unpaid Payroll Processing Fees"). Accordingly, Cenveo respectfully requests that the Bankruptcy Court authorize Cenveo to continue such programs and policies and to pay any

prepetition or postpetition claims with respect thereto, in each case, in the ordinary course of business on a postpetition basis.

**F. Reimbursable Expenses**

23. Prior to the Commencement Date and in the ordinary course of business, Cenveo reimbursed certain Employees or paid certain credit card invoices on behalf of certain Employees for approved expenses incurred on behalf of Cenveo in the scope of their employment (the "Reimbursable Expenses"). Reimbursable Expenses include, among other expenses, travel-related expenses such as meal allowances and car mileage allowances, entertainment expenses, and relocation fees. Employees who pay for their own Reimbursable Expenses up front apply for reimbursement of such expenses by submitting an expense report to Cenveo. Once it has determined that the charges are for allowable reimbursable business expenses, Cenveo has typically reimbursed such Employees for any such expenses.

24. As of the Commencement Date, certain Employees pay for Reimbursable Expenses with their American Express Company ("Amex") corporate credit cards (the "Amex Credit Card"). Generally, Amex then invoices the Employee directly for these charges and it is the Employee's responsibility to make payments. The Employee then submits a reimbursement on account of the Reimbursable Expense to Cenveo and distributions are made within one to two weeks. However, the accounts are generally held in the names of the Employees, and, to the extent the Employee fail to remit payment to Amex for the Reimbursable Expenses, Amex may seek to collect such unpaid amounts directly from Cenveo.

25. As of the Commencement Date, certain of the Employees pay for travel related Reimbursable Expenses under Cenveo's travel program maintained by Travel, Inc. using Cenveo's travel account with Amex (the "Travel Account," and together with the Amex Credit Card, the "Amex Program"). Generally, Amex invoices Cenveo directly for charges relating to the Travel

Account. Following Cenveo's review of such invoices, such charges are paid directly by Cenveo to Amex.

26. In addition to the Amex program, as of the Commencement Date, certain Employees also pay for Reimbursable Expenses with their JPMorgan Chase & Co. ("JPMorgan") corporate credit cards (the "JPMorgan Credit Card") and their JPMorgan single-use-account cards (the "JPMorgan SUA Card," together, the "JPMorgan Cards"). Generally, JPMorgan invoices Cenveo directly for these charges and, following Cenveo's review of such invoices, such charges are paid directly by Cenveo to JPMorgan.

27. Cenveo's inability to reimburse the Reimbursable Expenses could impose a hardship on the Employees where such individuals incurred obligations for Cenveo's benefit. Employees incurred the Reimbursable Expenses as business expenses on Cenveo's behalf and with the understanding that such expenses would be reimbursed. As of the Commencement Date, Cenveo estimates that it owes approximately $200,000 in aggregate Reimbursable Expenses. Accordingly, Cenveo respectfully requests that the Bankruptcy Court authorize Cenveo to continue such programs and policies and to pay any prepetition or postpetition claims and fees with respect thereto, in each case, in the ordinary course of business on a postpetition basis. For the avoidance of doubt, Cenveo will not seek to pay any outstanding Reimbursable Expenses or fees related thereto in advance of the date they come due.

## II. Employee Benefits Programs

28. Cenveo has offered its Employees the ability to participate in a number of insurance and benefits programs, including, among other programs, medical, dental, and vision plans, basic life and accidental death insurance, supplemental life insurance, disability benefits, employee assistance programs, retirement plans, a relocation program, severance, and other employee benefit plans as described below (collectively, the "Employee Benefits Programs"). The Employee

Benefits Programs are, in each case, available to Employees depending on their status as full-time or part-time Employees, their level with the company, and their length of service (the "Eligible Employees").

29. As described above, failure to continue the Employee Benefits Programs could cause Employees to experience severe hardship. Accordingly, Cenveo respectfully requests that the Bankruptcy Court authorize Cenveo to continue such programs and policies and to pay any prepetition or postpetition claims with respect thereto, in each case, in the ordinary course of business on a postpetition basis.

**A. Health Benefit Plans**

30. Cenveo offers its Employees the opportunity to participate in a number of health benefit plans, including medical, prescription, stop-loss insurance, dental, and vision plans (collectively, the "Health Benefit Plans"). Specifically, Cenveo provides the following:

- Medical Plans: Cenveo permits eligible Employees to participate in either (a) a choice of fully-insured health care plans or (b) a self-insured heath care plan (collectively, the "Medical Plans"). Approximately 3,044 Employees participate in the Medical Plans. As of the Commencement Date, Cenveo estimates that it owes approximately $450,000 in administrative costs related to the fully-insured and self-insured medical plans, and approximately $400,000 on account of unreimbursed medical claims payments advanced to medical providers in connection with the self-insured medical plan. In addition, Cenveo offers its eligible Employees access to both a Flexible Savings Account ("FSA") and Health Savings and Spending Accounts ("HSA", and collectively with other coverage, the "Savings Accounts"), with HSAs and FSAs administered by Discovery Benefits and Wageworks. Approximately 1,290 Employees use the FSAs or HSAs, for which Cenveo pays a monthly administration fee of approximately $173,000, approximately $45,000 of which is outstanding as of the Commencement Date.

- Vision Plan: Cenveo permits eligible Employees to participate in a vision plan (the "Vision Plan"), which plan was previously administered by UnitedHealthCare. As of the Commencement

Date, Cenveo estimates that it owes approximately $15,000 on account of the Vision Plans.

- Dental Plan: Cenveo permits eligible Employees to participate in a dental plan (the "Dental Plan"), which plan was previously administered by Aetna. As of the Commencement Date, Cenveo estimates that it owes approximately $60,000 on account of the Healthcare Plans.

- Stop-Loss Insurance Policy: Cenveo maintains a stop-loss insurance policy (the "Stop-Loss Insurance Policy") with the Swiss Reinsurance Company Ltd. ("Swiss Re") to protect against catastrophic claims under their Healthcare Plans—*i.e.*, claims in excess of $750,000. Coverage for the Stop-Loss Insurance Policy is covered in the premiums paid to Swiss Re for the Healthcare Plan. Cenveo estimates that the ongoing monthly administrative cost, which includes the Stop-Loss Insurance Policy is approximately $33,000. As of the Commencement Date, Cenveo estimates that it owes approximately $10,000 on account of the Stop-Loss Insurance Policy.

**B. Workers' Compensation and Other Insurance Programs**

**1. Workers' Compensation**

31. Cenveo maintains workers' compensation insurance for its Employees at the statutorily required level for each state in which it has Employees (collectively, and as described herein, the "Workers' Compensation Program"). Cenveo maintains a workers' compensation policy with a stop-loss insurance policy (the "Workers' Compensation Insurance Policy") with The Hartford Financial Services, Inc. and its affiliates ("Hartford") as part of the Workers' Compensation Program. Additionally, Cenveo self-insures workers' compensation obligations in certain jurisdiction, including Ohio. Cenveo pays approximately $2 million annually to maintain the Workers' Compensation Program.

32. Cenveo must continue the claim assessment, determination, adjudication, and payment pursuant to the Workers' Compensation Program, without regard to whether such liabilities are outstanding before the Commencement Date, to ensure that Cenveo complies with

applicable workers' compensation laws and requirements. There are approximately 133 open claims under the Workers' Compensation Policies. Cenveo is not aware of any potential claims against them that have not yet been formally reported. As of the Commencement Date, Cenveo estimates that there is approximately $6 million in estimated prepetition liability on account of the Workers' Compensation Programs. Cenveo seeks authority to continue the Workers' Compensation Programs in the ordinary course on a postpetition basis.[4]

**2. Basic Life and Accidental Death Insurance, Disability Benefits, and Employee Assistance Programs**

33. Cenveo has provided its Employees with basic life and accidental death and dismemberment insurance, supplemental life insurance, short-term and long-term disability benefits, and employee assistance program benefits through various policies administered by Voya (collectively, the "Life, AD&D, Disability, and EAP Plans"). As of the Commencement Date, Cenveo estimates that it owes approximately $6,000 on the prepetition Life, AD&D, Disability, and EAP Plans (including employer contributions, employee contributions, and administrative costs).

**C. COBRA Benefits Program**

34. Pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), former Employees of Cenveo (the "COBRA Participants") must, in certain instances, continue insurance coverage under the Medical Plan, Dental Plan, and Vision Plan (the "COBRA Benefits"). More specifically, COBRA Participants are entitled by law to continue to receive COBRA Benefits for up to 18 months, and in some instances up to 36 months, following

---

[4] Certain of Cenveo's Workers' Compensation Programs may change postpetition in the ordinary course due to changes in applicable laws and regulations and Cenveo's ability to meet requirements thereunder. By this Motion, Cenveo requests authority to continue the Workers' Compensation Programs postpetition, including making any changes to current policies and practices that become necessary.

termination of employment. Approximately, 36 COBRA Participants receive benefits under the Medical Plan, approximately 31 COBRA Participants receive benefits under the Dental Plan and approximately 11 COBRA Participants received benefits under the Vision Plan.

35. COBRA Participants are responsible for paying all premium costs associated with the COBRA Benefits. To assist in the administration of the COBRA Benefits, Cenveo utilizes the services of Mercer MarketPlace.

36. The costs of any COBRA fees (the "COBRA Fees") are paid directly to Cenveo by Mercer Marketplace and then Cenveo funds Mercer Marketplace on a monthly basis to pay Aetna, Anthem, Kaiser, or UMPC. As of the Commencement Date, Cenveo estimates that it owes approximately $6,000 in aggregate COBRA Fees. Accordingly, by this Motion, Cenveo respectfully requests that the Bankruptcy Court authorize Cenveo to continue COBRA Benefits and to pay any COBRA Fees or costs related thereto in the ordinary course of business on a postpetition basis.

**D. Retirement Plans**

37. As of the Commencement Date, Cenveo maintains a retirement savings plan for the benefit of its Employees that satisfies the requirements of section 401(k) of the Internal Revenue Code (the "401(k) Plan"). The 401(k) Plan is administered by John Hancock Retirement Plan Services and allows for automatic pre-tax salary deductions of eligible compensation up to the limits set forth by the Internal Revenue Code.

38. Cenveo also matches contributions to the 401(k) Plan for certain Represented Employees pursuant to their respective CBAs (the "401(k) Matching Contributions"). Cenveo pays the 401(k) Matching Contributions each pay period. As of the Commencement Date, Cenveo estimates that it owes approximately $5,500 on account of the 401(k) Matching Contributions to the 401(k) Plan.

**E. Paid Time Off**

39. Cenveo has, in the past, provided paid time off to certain eligible Employees as a benefit (the "Paid Time Off"). With the exception of those Employees in California, whose Paid Time Off accrues at a rate generally determined by the Employee's length of employment, those Employees at all of Cenveo's non-California locations with five years of service or fewer are eligible to receive 13 days of Paid Time Off at the beginning of each calendar year. Cenveo's Paid Time Off program combines vacation, sick, and personal days into a single "bank" of time. When an Employee elects to take Paid Time Off, that Employee is paid his or her regular hourly or salaried rate. An Employee is only entitled to a prorated cash payment for unused Paid Time Off in the event that such Employee is terminated from Cenveo's employment.

40. Paid Time Off policies for Represented Employees are negotiated under their respective CBAs and may differ from Cenveo's general policies. As of the Commencement Date, Cenveo estimates that approximately $4 million in Paid Time Off has been earned by Employees. Cenveo seeks authority to pay any amounts due with respect to earned but unused Paid Time Off for terminated Employees and to continue the Paid Time Off policies in the ordinary course on a postpetition basis. For the avoidance of doubt, Cenveo does not pay out unused Paid Time Off at termination except where required by state law. Cenveo seeks to pay Paid Time Off to any Employee in excess of the $12,850 priority cap imposed by section 507(a)(4) of the Bankruptcy Code solely pursuant to the Final Order, not the Interim Order.

**F. Relocation Program (Final Order Only)**

41. Cenveo has previously paid for certain expenses associated with relocating, or providing temporary housing to certain Employees (the "Relocation Program"). Cenveo's Relocation Program is administered by Graebel Worldwide Relocation Services, Inc. ("Graebel"). As of the Commencement Date, Cenveo believes it owes approximately $26,000 to Graebel on

account of the Relocation Programs. Accordingly, subject to a Final Order, Cenveo respectfully requests that the Bankruptcy Court authorize Cenveo to continue such programs and policies and to pay any prepetition or postpetition claims with respect thereto, in each case, in the ordinary course of business on a postpetition basis.

**G. Additional Fringe Benefit Programs**

42. In addition to the foregoing, Cenveo offers the Employees the opportunity to participate in a range of ancillary benefits, including commuter benefits, identity theft protection, a legal plan, and other employee wellness programs (the "Additional Fringe Benefit Programs"). The aggregate cost of the Additional Programs is *de mimimus*. Accordingly, Cenveo respectfully requests that the Bankruptcy Court authorize Cenveo to continue such programs and policies and to pay any prepetition or postpetition claims with respect thereto, in each case, in the ordinary course of business on a postpetition basis.

## Basis for Relief

### I. Sufficient Cause Exists to Authorize Cenveo to Honor the Employee Compensation and Benefits Obligations

#### A. Certain of the Employee Compensation and Benefits Are Entitled To Priority Treatment

43. Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle the majority of the Employee Compensation and Benefits to priority treatment. As priority claims, Cenveo is required to pay these claims in full to confirm a chapter 11 plan. *See* U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims, given priority under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, for (a) wages, salaries or commissions, including vacation, severance, and sick leave pay earned by an individual and (b) contributions to an employee benefit plan). To the extent that an Employee receives no more than $12,850 on account of claims entitled to priority, the relief sought with respect to compensation only affects the timing of payments to

Employees and does not have any material negative impact on recoveries for general unsecured creditors. Indeed, Cenveo submits that payment of the Employee Compensation and Benefits at this time enhances value for the benefit of all interested parties. Finding, attracting, and training new qualified talent would be extremely difficult and would most likely require higher salaries, guaranteed bonuses, and more comprehensive compensation packages than are currently provided to Employees.

**B. Payment of Certain Employee Compensation and Benefits Is Required by Law**

44. Cenveo seeks authority to pay the Withholding Obligations to the appropriate third-party payees. These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' Wages. Indeed, certain Withholding Obligations are not property of Cenveo's estates because Cenveo has withheld such amounts from Employees' Wages on another party's behalf. *See* 11 U.S.C. §§ 541(b)(1), (d). Further, federal and state laws require Cenveo to withhold certain tax payments from Employees' Wages and to pay such amounts to the appropriate taxing authority. 26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the Withholding Obligations may not be property of Cenveo's estates, Cenveo requests authorization to transmit the Withholding Obligations to the proper parties in the ordinary course of business.

45. Similarly, state laws require Cenveo to maintain the Workers' Compensation Program. If Cenveo fails to maintain the Workers' Compensation Program, state laws may

prohibit Cenveo from operating in those states. Payment of all obligations related to the Workers' Compensation Program is therefore crucial to Cenveo's continued operations and the success of these chapter 11 cases.

## II. Payment of the Employee Compensation and Benefits Is Warranted Under Section 363(b)(1) of the Bankruptcy Code and the Doctrine of Necessity

46. Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of prepetition obligations in appropriate circumstances. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 175 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc.*, (*In re James A. Phillips, Inc.*), 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay prepetition claims of suppliers who were potential lien claimants). In authorizing payments of certain prepetition obligations, courts have relied on several legal theories, rooted in sections 1107(a), 1108, 363(b), 507, and 105(a) of the Bankruptcy Code.

47. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *Id.* Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

48. Consistent with a debtor’s fiduciary duties, courts have also authorized payment of prepetition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so. *See, e.g., In re Ionosphere Clubs*, 98 B.R. at 175 (discussing prior order authorizing payment of prepetition wage claims pursuant to section 363(b) and noting that relief is appropriate where payment is needed to “preserve and protect its business and ultimately reorganize, retain its currently working employees and maintain positive employee morale.”); *see also Armstrong*, 29 B.R. at 397 (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors). Specifically, the business judgment standard requires that a debtor “articulate some business justification, other than mere appeasement of major creditors.” *In re Ionosphere Clubs*, 98 B.R. at 175.

49. In addition, courts may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) codifies the Bankruptcy Court’s inherent equitable powers to “issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.” Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor’s businesses. *See In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) (holding that the “doctrine of necessity” stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor’s organization”). Specifically, the Bankruptcy Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the “necessity of

payment" rule (also referred to as the "doctrine of necessity"). *See In re Ionosphere Clubs*, 98 B.R. at 176.

50. Cenveo submits that the payment of the Employee Compensation and Benefits represents a sound exercise of Cenveo's business judgment, is necessary to avoid immediate and irreparable harm to Cenveo's estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code. Paying prepetition wages, employee benefits, and similar obligations will benefit Cenveo's estates and their creditors by allowing Cenveo's business operations to continue without interruption. For instance, a substantial amount of Cenveo's profit producing employee base receive commission as part of their compensation structure. Indeed, Cenveo believes that without the relief requested herein, Employees may seek alternative employment opportunities, perhaps with Cenveo's competitors. Such a development would deplete Cenveo's workforce, thereby hindering Cenveo's ability to operate its business and, likely, diminishing stakeholder confidence in Cenveo's ability to successfully reorganize. The loss of valuable Employees and resulting need to recruit new personnel (and the costs attendant thereto) would be distracting at this crucial time when Cenveo needs to focus on stabilizing its business operations. Accordingly, there can be no doubt that Cenveo must do its utmost to retain its workforce by, among other things, continuing to honor all wage, benefits, and related obligations, including the prepetition Employee Compensation and Benefits.

51. In addition, the majority of Employees rely exclusively on the Employee Compensation and Benefits to satisfy their daily living expenses. Many of Cenveo's Employees expect and require their wages to arrive on a timely basis. Consequently, Employees will be exposed to significant financial difficulties if Cenveo is not permitted to honor its obligations related thereto expeditiously. Moreover, failure to satisfy such obligations will jeopardize

Employee morale and loyalty at a time when Employee support is critical to Cenveo's businesses. Furthermore, if this Court does not authorize Cenveo to honor its various obligations under the insurance programs described herein, Employees will not receive health coverage and, thus, may be obligated to pay certain health care claims that Cenveo has not satisfied. The loss of health care coverage will result in considerable anxiety for Employees (and likely attrition) at a time when Cenveo needs such Employees to perform their jobs at peak efficiency. Additionally, as set forth above, Employee attrition would cause Cenveo to incur additional expenses to find appropriate and experienced replacements, severely disrupting Cenveo's operations at this critical juncture.

52. The importance of a debtor's employees to its operations has been repeatedly recognized by courts in this district, and such courts have granted relief similar to the relief requested herein. *See, e.g.*, *In re 21st Century Oncology Holdings, Inc.*, Case No. 17-22770 (RDD) (Bankr. S.D.N.Y. June 20, 2017) (authorizing debtors to continue employee compensation and benefit programs and pay certain prepetition obligations related thereto on a postpetition basis); *In re BCBG Max Azria Global Holdings, LLC*, Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017) (same); *In re Avaya Inc.*, Case No. 17-10089 (SMB) (Bankr. S.D.N.Y. Mar. 20, 2017) (same); *In re Sabine Oil & Gas Corp.*, Case No. 15-11835 (SCC) (Bankr. S.D.N.Y. July 16, 2015) (same); *In re Eagle Bulk Shipping Inc.*, Case No. 14-12303 (SHL) (Bankr. S.D.N.Y. Sept. 19, 2014) (same).[5]

53. Accordingly, Cenveo respectfully requests that the Bankruptcy Court authorize Cenveo to pay any prepetition amounts accrued and unpaid on account of the Employee

---

[5] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of Cenveo's counsel.

Compensation and Benefits and to continue the Employee Compensation and Benefits on a postpetition basis in the ordinary course of business and consistent with past practices.

## III. Cenveo Seeks a Waiver of the Automatic Stay as It Applies to Workers' Compensation Claims

54. Section 362(a)(1) of the Bankruptcy Code operates to stay:

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." 11 U.S.C. § 362(d)(1).

55. Cenveo seeks authorization, under section 362(d) of the Bankruptcy Code, to permit Employees to proceed with their workers' compensation claims in the appropriate judicial or administrative forum. Cenveo believes that cause exists to modify the automatic stay because staying the workers' compensation claims could have a detrimental effect on the financial well-being and Employee morale and lead to the departure of certain Employees who are critical at this juncture. Such departures could cause a severe disruption in Cenveo's businesses to the detriment of all parties in interest.

## Processing of Checks and Electronic Fund Transfers Should Be Authorized

56. Cenveo has sufficient funds to pay any amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral and approval of postpetition debtor-in-possession financing (subject to and limited by the requirements imposed on Cenveo under the terms of any interim and/or final orders regarding the use of cash collateral or the approval of postpetition

financing, or any budget in connection therewith). In addition, under Cenveo's existing cash management system, which is described in further detail in a separate motion, Cenveo can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Employee Compensation and Benefits obligations. Accordingly, Cenveo believes there is minimal risk that checks or wire transfer requests that the Bankruptcy Court has not authorized will be inadvertently made. Therefore, Cenveo respectfully requests that the Bankruptcy Court authorize and direct all applicable financial institutions, when requested by Cenveo, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

57. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Commencement Date "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, Cenveo believes an immediate and orderly transition into chapter 11 is critical to the viability of its operations and that any delay in granting the relief requested could hinder Cenveo's operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt Cenveo's operations at this critical juncture and imperil Cenveo's restructuring. Accordingly, Cenveo submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

58. To successfully implement the foregoing, Cenveo requests that the Bankruptcy Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule

6004(a) and that Cenveo has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **Reservation of Rights**

59. Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against Cenveo, (b) a waiver of Cenveo's rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of Cenveo's rights under the Bankruptcy Code or any other applicable law, or (g) a concession by Cenveo that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and Cenveo expressly reserves its rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Bankruptcy Court grants the relief sought herein, any payment made pursuant to the Bankruptcy Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of Cenveo's rights to subsequently dispute such claim.

## **Motion Practice**

60. This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of its application to this Motion. Accordingly, Cenveo submits that this Motion satisfies Local Rule 9013-1(a).

## **Notice**

61. Cenveo will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the Office of the United States Trustee for the Southern

District of New York; (b) the holders of the 50 largest unsecured claims against Cenveo (on a consolidated basis); (c) the agents under Cenveo's prepetition asset-based credit facility; (d) the agents under Cenveo's proposed postpetition debtor in possession financing facilities; (e) counsel to the *ad hoc* group of certain holders of Cenveo's prepetition first-lien notes; (f) counsel to Brigade Capital Management, LP, in its capacity as a holder of Cenveo's prepetition first lien notes and second lien notes; (g) the indenture trustee under Cenveo's prepetition first lien notes; (h) the indenture trustee under Cenveo's prepetition second lien notes; (i) the indenture trustee under Cenveo's prepetition unsecured notes; (j) the indenture trustee under Cenveo's prepetition first-in, last-out secured notes; (k) counsel to Allianz GI US High Yield Fund, in its capacity as a holder of Cenveo's first-in, last-out secured notes and unsecured notes; (l) the Pension Benefit Guaranty Corporation; (m) the United States Attorney's Office for the Southern District of New York; (n) the Internal Revenue Service; (o) the United States Securities and Exchange Commission; (p) the Environmental Protection Agency and all similar state environmental agencies; (q) the attorneys general in the states where Cenveo conducts its business operations; and (r) any party that has requested notice pursuant to Bankruptcy Rule 2002. Cenveo submits that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

62. No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, Cenveo respectfully requests that the Bankruptcy Court enter the Interim Order and Final Order granting the relief requested herein and such other relief as the Bankruptcy Court deems appropriate under the circumstances.

Dated: February 2, 2018
New York, New York

*/s/ Jonathan S. Henes*

Jonathan S. Henes, P.C.
Joshua A. Sussberg, P.C.
George Klidonas
Natasha Hwangpo
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

\- and -

James H.M. Sprayregen, P.C.
Melissa N. Koss
Gregory F. Pesce (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Proposed Counsel to Cenveo, Inc., et al.*

# EXHIBIT A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| CENVEO, INC., *et al.*,[1] | ) | Case No. 18-22178 (RDD) |
| Debtors. | ) | (Joint Administration Requested) |

**INTERIM ORDER AUTHORIZING CENVEO, INC., *ET AL.*, TO (I) PAY PREPETITION EMPLOYEE WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EMPLOYEE EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, "Cenveo") for entry of an interim order (this "Interim Order"), authorizing Cenveo to (a) pay certain prepetition employee wages, salaries, other compensation, and reimbursable employee expenses and (b) continue employee benefits programs in the ordinary course all as more fully set forth in the Motion; and upon the First Day Declaration; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that Cenveo's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and

[1] The last four digits of Cenveo, Inc.'s tax identification number are 0533. Due to the large number of Debtors in these chapter 11 cases, for which Cenveo has requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of Cenveo's proposed claims and noticing agent at https://cases.primeclerk.com/cenveo. The location of Cenveo's service address for purposes of these chapter 11 cases is: 777 Westchester Avenue, Suite 111, White Plains, New York 10604.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on an interim basis as set forth herein.

2. The final hearing (the "Final Hearing") on the Motion shall be held on __________, 2018, at__:__ _.m., prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on __________, 2018, and shall be served on: (a) Cenveo and its counsel; (b) the agents under Cenveo's proposed postpetition debtor in possession financing facilities, and their respective counsel; (c) counsel to the *ad hoc* group of certain holders of Cenveo's prepetition first-lien notes; (d) Brigade Capital Management, LP, in its capacity as a holder of Cenveo's prepetition first lien notes and second lien notes, and its counsel; (e) the Committee, and its counsel; (f) each Affected Entity; (g) the U.S. Trustee; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3. Cenveo is authorized in its sole discretion, to continue to provide, and to pay any claims or obligations on account of, the Employee Compensation and Benefits in the ordinary course and in accordance with Cenveo's prepetition policies and prepetition practices, irrespective of whether such obligations arose prepetition or postpetition; *provided, however* that pending entry of the Final Order, Cenveo shall not make any payment to any individual with respect to any prepetition claim on account of the Employee Compensation and Benefits in excess of $12,850;

*provided*, *further* that payments on account of the Commissions, the Unpaid Commissions, or the Relocation Program shall not be made by this Interim Order and shall be made solely pursuant to the Final Order; *provided*¸ *further*, for the avoidance of doubt, Cenveo will not seek to pay any outstanding prepetition or postpetition claims with respect to the Reimbursable Expenses in advance of the date they come due.

4. Cenveo shall not make any non-ordinary course bonus, incentive, or severance payments to its Employees or any Insiders (as such term is defined in section 101(31) of the Bankruptcy Code) without further order of this Court. For the avoidance of doubt, no bonus, incentive, or severance payments shall be made to any Insider without further order of this Court.

5. Pursuant to section 362(d) of the Bankruptcy Code, Employees are authorized to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum and Cenveo is authorized to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

6. Cenveo is authorized to forward any unpaid amounts on account of Deductions or Payroll Taxes to the appropriate third-party recipients or taxing authorities in accordance with Cenveo's prepetition policies and practices.

7. Cenveo is authorized to pay costs and expenses incidental to payment of the Employee Compensation and Benefits obligations, including all administrative and processing costs and payments to outside professionals.

8. Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Employee Compensation and Benefits obligations.

9. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on Cenveo's designation of any particular check or electronic payment request as approved by this Interim Order.

10. Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of Cenveo's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of Cenveo's rights or the rights of any other Person under the Bankruptcy Code or any other applicable law; or (g) a concession by Cenveo that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and Cenveo expressly reserves its rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

11. Notwithstanding anything to the contrary contained in this Interim Order or in the Motion, any payment, obligation, or other relief authorized by this Interim Order shall be subject to and limited by the requirements imposed on Cenveo under the terms of any interim and/or final orders regarding the use of cash collateral or the approval of postpetition financing (any such order, a "Financing Order"), or any budget in connection therewith, approved by this Court in these chapter 11 cases. In the event of any conflict between the terms of this Interim Order and a

Financing Order, the terms of the applicable Financing Order shall control (solely to the extent of such conflict).

12. Cenveo is authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any prepetition amounts owed to its Employees.

13. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

14. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

15. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

16. Cenveo is authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

17. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

White Plains, New York
Dated: ____________, 2018

_______________________________________
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

## Proposed Final Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| CENVEO, INC., *et al.*,[1] | ) | Case No. 18-22178 (RDD) |
| Debtors. | ) | (Joint Administration Requested) |

**FINAL ORDER AUTHORIZING CENVEO, INC., *ET AL.*, TO (I) PAY PREPETITION EMPLOYEE WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EMPLOYEE EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, "Cenveo") for entry of a final order (this "Final Order"), authorizing Cenveo to (a) pay certain prepetition employee wages, salaries, other compensation, and reimbursable employee expenses and (b) continue employee benefits programs in the ordinary course, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having

[1] The last four digits of Cenveo, Inc.'s tax identification number are 0533. Due to the large number of Debtors in these chapter 11 cases, for which Cenveo has requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of Cenveo's proposed claims and noticing agent at https://cases.primeclerk.com/cenveo. The location of Cenveo's service address for purposes of these chapter 11 cases is: 777 Westchester Avenue, Suite 111, White Plains, New York 10604.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that Cenveo's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. Cenveo is authorized in its sole discretion, to continue to provide, and to pay any claims or obligations on account of, the Employee Compensation and Benefits in the ordinary course and in accordance with Cenveo's prepetition policies and prepetition practices, irrespective of whether such obligations arose prepetition or postpetition.

3. Cenveo shall not make any non-ordinary course bonus, incentive, or severance payments to its Employees or any Insiders (as such term is defined in section 101(31) of the Bankruptcy Code) without further order of this Court. For the avoidance of doubt, no bonus, incentive, or severance payments shall be made to any Insider without further order of this Court.

4. Pursuant to section 362(d) of the Bankruptcy Code, Employees are authorized to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum and Cenveo is authorized to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

5. Cenveo is authorized to forward any unpaid amounts on account of Deductions or Payroll Taxes to the appropriate third-party recipients or taxing authorities in accordance with Cenveo's prepetition policies and practices.

6. Cenveo is authorized to pay costs and expenses incidental to payment of the Employee Compensation and Benefits obligations, including all administrative and processing costs and payments to outside professionals.

7. Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Employee Compensation and Benefits obligations.

8. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on Cenveo's designation of any particular check or electronic payment request as approved by this Final Order.

9. Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the validity of any prepetition claim against a debtor entity; (b) a waiver of Cenveo's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of Cenveo's rights or the rights of any other Person under the Bankruptcy Code or any other applicable law; or (g) a concession by Cenveo that any liens (contractual, common law, statutory,

or otherwise) satisfied pursuant to the Motion are valid, and Cenveo expressly reserves its rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

10. Cenveo is authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any prepetition amounts owed to its Employees.

11. Notwithstanding anything to the contrary contained in this Final Order or in the Motion, any payment, obligation, or other relief authorized by this Final Order shall be subject to and limited by the requirements imposed on Cenveo under the terms of any interim and/or final orders regarding the use of cash collateral or the approval of postpetition financing (any such order, a "Financing Order"), or any budget in connection therewith, approved by this Court in these chapter 11 cases. In the event of any conflict between the terms of this Final Order and a Financing Order, the terms of the applicable Financing Order shall control (solely to the extent of such conflict).

12. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

13. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

14. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

15. Cenveo is authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

16. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

White Plains, New York
Dated: ____________, 2018

________________________________________
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE