**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CENVEO, INC., *et al.*,[1] | ) | Case No. 18-22178 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW,**
**AND ORDER CONFIRMING THE FOURTH AMENDED JOINT**
**CHAPTER 11 PLAN OF REORGANIZATION OF CENVEO, INC.,**
***ET AL.*, PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

WHEREAS Cenveo, Inc. and the other above-captioned debtors and debtors in possession (collectively, "Cenveo" or the "Debtors") have, among other things:[2]

   a.   commenced the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on February 2, 2018 (the "Petition Date");

   b.   continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

   c.   (i) filed, on April 2, 2018, the *Joint Chapter 11 Plan of Reorganization of Cenveo, Inc. and its Debtor Affiliates* [Docket No. 254], which plan and related documents were subsequently revised (as subsequently revised, the "Plan"), (ii) filed, on April 2, 2018, the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Cenveo, Inc.*, et al.*, Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 255], which disclosure statement and related documents were subsequently revised (as subsequently revised, the "Disclosure Statement"), and (iii) filed, on April 3, 2018, the *Motion of Cenveo, Inc., et al., for the Entry of an*

---

[1]   The last four digits of Cenveo, Inc.'s tax identification number are 0533.  Due to the large number of debtor entities in the chapter 11 cases, which cases are being jointly administered for procedural purposes, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of Cenveo's claims and noticing agent at https://cases.primeclerk.com/cenveo.  The location of Cenveo's service address for purposes of the chapter 11 cases is:  777 Westchester Avenue, Suite 111, White Plains, New York 10604.

[2]   All capitalized terms used and not otherwise defined in this *Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Reorganization of Cenveo, Inc.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code* shall have the meanings ascribed to them in the Plan (as defined herein).  The rules of interpretation set forth in Article I.B of the Plan shall apply to this Confirmation Order (as defined herein).

*Order Approving (I) the Adequacy of Information in the Disclosure Statement; (II) Solicitation and Notice Procedures; (III) Forms of Ballots and Notices in Connection Therewith; and (IV) Certain Dates with Respect Thereto* [Docket No. 256] which order and related documents were subsequently revised;

d.    filed, on June 5, 2018, the revised versions of (i) the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of Cenveo, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 450], and (ii) the *Amended Joint Chapter 11 Plan of Reorganization of Cenveo, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 449];

e.    filed, on June 6, 2018, the revised versions of (i) the *Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Reorganization of Cenveo, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 463], and (ii) the *Second Amended Joint Chapter 11 Plan of Reorganization of Cenveo, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 460];

f.    filed, on June 8, 2018, a *Notice of Filing of Solicitation Version of Third Amended Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Reorganization of Cenveo, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code and Solicitation Version of Third Amended Joint Chapter 11 Plan of Reorganization of Cenveo, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 474] (the "Prior Plan");

g.    caused solicitation materials and notice of the deadline for objecting to confirmation of the Plan to be distributed by June 13, 2018, and continuing thereafter, consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Disclosure Statement Order (as defined herein), which Disclosure Statement Order also approved, among other things, solicitation procedures (the "Solicitation Procedures") and related notices, forms, Ballots, and Master Ballots (collectively, the "Solicitation Packages"), as evidenced by, among other things, the *Affidavit of Service of Solicitation Materials* [Docket No. 494];

h.    caused notice of the Confirmation Hearing (the "Confirmation Hearing Notice") to be published on June 12, 2018 in *The Wall Street Journal*, in accordance with the Disclosure Statement Order [Docket No. 480];

i.    (i) filed, on June 29, 2018, the *Notice of Filing of Plan Supplement* [Docket No. 522], which included the following documents:  (A) the Rejected Executory Contracts and Unexpired Leases Schedule; and (B) the Assumed Executory Contract/Unexpired Lease Schedule; (ii) filed on July 3, 2018, the *Notice of Filing of Plan Supplement* [Docket No. 528], which included the following documents: (A) the identity of the members of the Reorganized Cenveo Board and executive management for Reorganized Cenveo; (B) a schedule of retained Causes of Action; (C) Management Incentive Plan term sheet; (D) the Description of Restructuring Transactions; (E) a summary of the KEIP; (F) the identity of the

Claims Oversight Monitor; (G) the Burton, Sr. Advisory Services Agreement and the Transition Agreement; (I) a governance term sheet summary (including the key terms of the Reorganized Cenveo Organizational Documents and Shareholders Agreement for Reorganized Cenveo), (J) the Exit ABL Facility term sheet, (K) the Exit Term Facility sheet; and (iii) filed on July 11, 2018, the *Notice of Filing of First Supplement to the Plan Supplement* [Docket No. 565], which included the following documents: (A) Amended Assumed Executory Contract/Unexpired Lease Schedule and (B) Amended Rejected Executory Contracts and Unexpired Leases Schedule; (iv) filed on August 8, 2018, the *Notice of Filing of Second Supplement to the Plan Supplement* [Docket No. 648], which included the following documents: (A) the Second Amended Assumed Executory Contract/Unexpired Lease Schedule and (B) the Second Amended Rejected Executory Contracts and Unexpired Leases Schedule; and (v) filed on August 9, 2018, the *Notice of Filing of Third Supplement to the Plan Supplement* [Docket No. 650], which included the following documents: (A) an amended Management Incentive Plan term sheet and a comparison against the version previously filed on July 3, 2018; (B) the amended Exit Term Facility Term Sheet; (C) form of the New Employment Agreements; and (D) Third Amended Rejected Executory Contracts and Unexpired Lease Schedule; filed on August 13, 2018, the *Notice of Filing of Fourth Supplement to the Plan Supplement* [Docket No. 655], which included the following documents: the amended identity of the members of the Reorganized Cenveo Board and executive management for Reorganized Cenveo and a comparison against the version previously filed on July 3, 2018; filed on August 14, 2018, the *Notice of Filing of Fifth Supplement to the Plan Supplement* [Docket No. 669], which included the following documents: the (A) form the Reorganized Cenveo Certificate of Incorporation; (B) form of the Reorganized Cenveo Bylaws; (C) Form of the Shareholders Agreement; (D) Third Amended Assumed Executory Contracts/Unexpired Leases Schedule; filed on August 16, 2018, the *Notice of Filing of Sixth Supplement to the Plan Supplement* [Docket No. 676], which included the following documents: (A) the amended Exit Term Facility Term Sheet and a comparison against the version previously filed on August 9, 2018; (B) the amended Exit ABL Facility Term Sheet; (C) the Description of Restructuring Transactions and a comparison against the version previously filed on July 3, 2018 (together with each *Notice of Filing of Plan Supplement* and as amended or supplemented thereafter, the "Plan Supplement");

j.      filed, on July 16, 2018, the *Declaration of Craig E. Johnson of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Third Amended Joint Chapter 11 Plan of Reorganization of Cenveo, Inc.,* et al., *Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 589] (as may be amended, modified, or supplemented, the "Voting Certification");

k.      filed, on August 9, 2018, the *Fourth Amended Joint Chapter 11 Plan of Reorganization of Cenveo, Inc.,* et al., *Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 651];

l.      filed, on August 13, 2018, *Cenveo's (A) Memorandum of Law in Support of Confirmation of the Fourth Amended Joint Chapter 11 Plan of Reorganization of Cenveo, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code and (B) Omnibus Reply to Objections to Confirmation of the Plan* [Docket No. 656] (the "<u>Confirmation Brief</u>");

m.      filed, on August 13, 2018, *Reply of Cenveo, Inc., et al., to Objection of CapRealty 01 – City of Industry, LLC to (I) Confirmation of Debtors' Third Amended Joint Chapter 11 Plan of Reorganization and (II) Assumption of Lease, Including Cure Amount* [Docket No. 657];

n.      filed, on August 13, 2018, the *Declaration of Ayman Zameli in Support of Confirmation of the Fourth Amended Joint Chapter 11 Plan of Reorganization of Cenveo, Inc. et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 658] (the "<u>Zameli Declaration</u>");

o.      filed, on August 13, 2018, the *Declaration of Eric Koza in Support of Confirmation of the Fourth Amended Joint Chapter 11 Plan of Reorganization of Cenveo, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 659] (the "<u>Koza Declaration</u>");

p.      filed, on August 13, 2018, the *Declaration of Neil Augustine in Support of Confirmation of the Fourth Amended Joint Chapter 11 Plan of Reorganization of Cenveo, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 660] (the "<u>Augustine Declaration</u>" and together with the Zameli Declaration and the Augustine Declaration, the "<u>Confirmation Declarations</u>");[3]

q.      filed, on August 13, 2018, the *Notice of Filing of Proposed Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Reorganization of Cenveo, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (this "<u>Confirmation Order</u>");

This Court having:

a.      entered the *Order Approving (I) the Adequacy of the Third Amended Disclosure Statement, (II) Solicitation and Notice Procedures with Respect to Cenveo's Third Amended Joint Plan of Reorganization of Cenveo, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code, (III) Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Docket No. 473] (the "<u>Disclosure Statement Order</u>");

b.      reviewed the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Brief, the Confirmation Declarations, the Voting Certification, and all pleadings, exhibits, statements, responses, and comments regarding

---

[3]     The Plan, which is confirmed as set forth herein, is attached hereto as **<u>Exhibit 1</u>**.

Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

c.      held the Confirmation Hearing on August 16, 2018;

d.      heard the statements, arguments, and objections made by counsel in respect of Confirmation;

e.      considered all testimony, documents, filings, and other evidence admitted at Confirmation; and

f.      overruled any and all objections to the Plan and to Confirmation and all statements and reservations of rights not consensually resolved or withdrawn, unless otherwise indicated herein.

NOW, THEREFORE, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation has been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and that the legal and factual bases set forth in the documents filed in support of Confirmation and all evidence proffered or adduced by counsel at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following Findings of Fact and Conclusions of Law and Orders:

## I. <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

IT IS HEREBY DETERMINED FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.      <u>Findings and Conclusions.</u>**

1.      The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as

such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.**    **Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)).**

2.    The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b).  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court has the power to enter a Final Order under the U.S. Constitution determining that the Plan and the Plan Documents, including the Description of Restructuring Transactions and the transactions and mergers contemplated in connection therewith and set forth in greater detail therein, comply with the applicable provisions of the Bankruptcy Code and applicable law and should be confirmed and approved.  Venue is proper before the Court pursuant to 28 U.S.C. § 1408.

**C.**    **Eligibility for Relief.**

3.    The Debtors are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.**    **Judicial Notice.**

4.    The Court takes judicial notice of (and deems admitted into evidence for Confirmation) the docket of the Chapter 11 Cases maintained by the Clerk of the Court and/or its duly appointed agent, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered or adduced at, the hearings held before the Court during the pendency of the Chapter 11 Cases, including, without limitation, the hearing to consider the adequacy of the Disclosure Statement and the Confirmation Hearing. Any resolutions of any objections explained on the record at the Confirmation Hearing are incorporated herein by reference.

**E.**     **Notice and Transmittal of Solicitation Materials; Adequacy of Solicitation Notices.**

5.     The Plan, the Disclosure Statement, the Disclosure Statement Order, the ballots for voting on the Plan (the "Ballots"), the Confirmation Hearing Notice, the Non-Voting Status Notices and Third Party Release Opt-Out Election Forms, the Debtors' Cover Letter, the UCC Plan Support Letter, and the other materials distributed by the Debtors in connection with Confirmation of the Plan (collectively, the "Confirmation Materials") were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, with the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), and with the procedures set forth in the Disclosure Statement Order.  Notice of the Confirmation Hearing was appropriate, sufficient and satisfactory based upon the circumstances of the Chapter 11 Cases.  The transmittal and service of the Confirmation Materials complied with the approved Solicitation Procedures, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, were conducted in good faith, and were in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations.  Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required.

**F.**     **Voting.**

6.     On July 16, 2018, the Debtors filed the Voting Certification.  As evidenced thereby, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures, and the Local Rules.

**G.**     **Good-Faith Solicitation (11 U.S.C. § 1125(e)).**

7.     Based on the record before the Court in the Chapter 11 Cases, the Debtors, the Ad Hoc First Lien Committee, and each of their respective current and former Affiliates, and such

Entity's and its current and former Affiliates' current and former Interest holders (regardless of whether such interests are held directly or indirectly), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, controlling persons, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such, together with their respective successors and assigns, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Solicitation Procedures, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in connection with all of their respective activities relating to the offer, issuance, sale, solicitation, and/or purchase of the securities offered, issued, sold, solicited, and/or purchased under the Plan, their participation in the Chapter 11 Cases, and the activities described in section 1125 of the Bankruptcy Code and therefore are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**H.      Plan Supplement.**

8.      The filing and notice of the Plan Supplement, and any modifications or supplements thereto, were proper and in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, and no other or further notice is or shall be required.

**I.      Modifications to the Plan.**

9.      Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Prior Plan since the commencement of Solicitation, as described or set forth herein, in the Plan Supplement or in the Plan, as currently on-file with the Court, including the removal of the "New Second Lien Debt" and/or the receipt of Cash proceeds of any "Additional Exit Financing" originally contemplated under the Prior Plan (collectively, the "Plan Modifications"), constitute technical or non-material changes that do not materially and adversely affect or change the

recovery levels with respect to any particular Class of Claims or Interests, or changes with respect to particular Claims or Interests made pursuant to the agreement of the Holders of such Claims or Interests.  Pursuant to Bankruptcy Rule 3019, these Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

10.    This Confirmation Order contains or results in modifications to the Plan that were made to address objections and informal comments received from various parties-in-interest. The Plan Modifications are consistent with the provisions of the Bankruptcy Code.   The disclosure of any modifications to the Plan prior to or on the record at the Confirmation Hearing constitutes due and sufficient notice of any and all Plan Modifications.  The Plan, as modified, shall constitute the Plan submitted for Confirmation.

**J.**    **Objections.**

11.    To the extent that any objections, reservations of rights, statements, or joinders to Confirmation have not been resolved, withdrawn, waived, adjourned, or settled prior to entry of this Confirmation Order or otherwise resolved herein or as stated on the record of the Confirmation Hearing, they are hereby overruled on the merits based on the record before this Court.

**K.**    **Burden of Proof.**

12.    The Debtors, as the proponents of the Plan, have met their burden of proving the elements of the applicable sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

**L.**     **Bankruptcy Rule 3016.**

13.     The Plan is dated and identifies the Debtors as the Plan proponents, thereby satisfying Bankruptcy Rule 3016(a).    The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

**M.**     **Financing Order.**

14.     On March 8, 2018, the Court entered the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 (I) Authorizing the Debtors to Obtain Senior Secured Priming Superpriority Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Authorizing Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying The Automatic Stay; and (VI) Granting Related Relief* [Docket No. 188] (the "Final DIP Order").

**N.**     **Exit Facilities Commitment Documents Financing Order.**

15.     On August 14, 2018, the Debtors, Bank of America, N.A. ("Bank of America"), Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") and each of the other lenders party thereto, entered into a Commitment Letter for a $175,000,000 Senior Secured Asset-Based Exit Credit Facility (the "Exit ABL Commitment Letter") and the accompanying Fee Letters (the "Exit ABL Fee Letters", together with the Exit ABL Commitment Letter, collectively, the "Exit ABL Commitment Documents").

16.     On August 14, 2018, the Debtors and certain lenders party thereto, entered into a Commitment Letter for a $236 million senior secured first lien term loan facility (the "Exit Term Commitment Letter") and the accompanying fee letters (the "Exit Term Fee letters", and together with the Exit Term Commitment Letter, collectively, the "Exit Term Commitment Documents").

17.     On August 14, 2018, the Debtors filed the *Motion of Cenveo, Inc.,* et al., *for Entry of an Order Authorizing (I) Entry into the Exit Financing Commitment Letters and Related Fee*

*Letters and (II) Incurrence and Payment of Certain Fees and Costs in Connection Therewith* [Docket No. 672] (the "Exit Financing Motion").  Relatedly, on August 14, 2018, the Debtors also filed the *Motion of Cenveo, Inc.,* et al.*, for Entry of an Order Authorizing Cenveo, Inc., et al., to Restrict Access to Certain Confidential Information Related to the Exit Financing Commitment Letters and Related Exit Fee Letters* and the *Ex Parte Motion of Cenveo, Inc.,* et al.*, to Shorten the Notice Period with Respect to the Motion of Cenveo, Inc., et al., for Entry of an Order Authorizing (I) Entry Into the Exit Financing Commitment Letters and Related Exit Fee Letters and (II) Incurrence and Payment of Certain Fees and Costs in Connection Therewith and Motion of Cenveo, Inc.,* et al.*, for Entry of an Order Authorizing Cenveo, Inc.,* et al.*, to Restrict Access to Certain Confidential Information Related to the Exit Financing Commitment Letters and Related Exit Fee Letters*.

**O.**    **Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

18.    The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

a.    Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).  As required by section 1123(a)(1), in addition to Administrative Claims, DIP Facilities Claims, Professional Fee Claims, and  Priority Tax Claims, which need not be classified, Article III of the Plan designates 9 Classes of Claims and Interests.  As required by section 1122(a) of the Bankruptcy Code, the Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as applicable, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and Interests.  Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

b.    Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Article III of the Plan specifies that Classes 1, 2, and 4 are Unimpaired under the Plan, and Classes 7 and 8 are either deemed Unimpaired or Impaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

c.    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  Article III of the Plan specifies that Classes 3, 5A, 5B, 6, and 9 are Impaired under the Plan,

and that Classes 7 and 8 are either deemed Unimpaired or Impaired under the Plan, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

d.  <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.  <u>Article III</u> of the Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class except to the extent that a Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

e.  <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>.  The Plan and the various documents included in the Plan Supplement provide adequate and proper means for implementation of the Plan, including, without limitation:  (i) the consummation of the Restructuring Transactions, the form and substance and timing of which shall be acceptable to the Debtors, the Exit Term Loan Lenders, the Exit ABL Agent and Lead Arrangers and the Requisite First Lien Creditors; (ii) the execution and delivery of Restructuring Documents, as applicable (the form and substance and timing of which shall be acceptable to the Debtors, the Exit Term Loan Lenders, the Exit ABL Agent and Lead Arrangers and the Requisite First Lien Creditors), including those agreements or other documents of merger, amalgamation, consolidation, contribution, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan; (iii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and the Plan Supplement (as may be modified pursuant to the terms of the Plan); (iv) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, contribution, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or local law; (v) establishing the General Unsecured Claims Cash Pool Account; (vi) the issuance of the Reorganized Cenveo Equity Interests; (vii) the entry into the Exit Facilities, including the execution and delivery of the Exit Facilities Documents and any related documents and granting of the Liens and security interests in accordance with the Exit Facilities Documents; (viii) the cancellation of certain existing agreements, obligations, instruments, and Interests; (ix) the continued vesting of the assets of the Debtors' Estates, including all Executory Contracts and Unexpired Leases assumed by the Debtors in the Reorganized Debtors; and (x) all other actions that the Debtors determine, with the consent of the Requisite First Lien Creditors, not to be unreasonably withheld, conditioned, or delayed, to be necessary, including making filings or recordings that may be required by applicable law in connection with the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

f.  <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>.  As required by section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents include, among other things, a provision prohibiting the issuance of non-voting

equity Securities and provide for an appropriate distribution of voting power among the classes of Securities possessing voting power.

g.  <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>.  The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.  The Plan and Plan Supplement disclose the individuals who will serve as the Reorganized Debtors' officers and directors.  The Plan and the Reorganized Cenveo Organizational Documents, as applicable, are consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of the Reorganized Debtors' officers and directors.  Accordingly, the Debtors have satisfied section 1129(a)(5) of the Bankruptcy Code.

h.  <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>.  The additional provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code and, therefore, are consistent with section 1123(b) of the Bankruptcy Code.

(i)  <u>Impairment/Unimpairment of Any Class of Claims or Interests (11 U.S.C. § 1123(b)(1))</u>.  As contemplated by section 1123(b)(1) of the Bankruptcy Code, pursuant to the Plan, Classes 1, 2 and 4 are Unimpaired, Classes 3, 5A, 5B, 6 and 9 are Impaired, and Classes 7 and 8 are either deemed Unimpaired or Impaired.

(ii)  <u>Assumption and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))</u>.  <u>Article V</u> of the Plan provides that all Executory Contracts and Unexpired Leases not otherwise assumed or rejected will be deemed assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than: (a) those that are identified on the Rejected Executory Contracts and Unexpired Leases Schedule; (b) those that have been previously rejected by a Final Order; (c) those that have been previously assumed by a Final Order; (d) those that are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; or (e) those that are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

(iii)  <u>Compromise and Settlement (11 U.S.C. § 1123(b)(3)(A))</u>.  In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan and the Global Settlement constitute a good-faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that all Holders of Claims or Interests may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made on account of such Allowed Claim or Allowed Interest.  The compromise and

settlement of such Claims and Interests embodied in the Plan and the Global Settlement and reinstatement and unimpairment of other Classes identified in the Plan are in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests, and are fair, equitable, and reasonable.

(iv)   <u>Retention of Claims (11 U.S.C. § 1123(b)(3)(B))</u>.  In accordance with section 1123(b)(3)(B) of the Bankruptcy Code, <u>Article IV.M</u> of the Plan provides that, among other things, subject to <u>Article IV.S</u> of the Plan (with respect to certain Avoidance Actions) and <u>Article VIII</u> of the Plan, the Reorganized Debtors shall retain and may enforce all rights to commence, prosecute, pursue, and settle any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, including pursuant to <u>Article VIII</u> of the Plan or a Final Order of the Bankruptcy Court, the Reorganized Debtors expressly reserve all Causes of Action for later adjudication.  Additionally, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action preserved pursuant to <u>Article IV.M</u> of the Plan that a Debtor may hold against any Entity shall vest in the Reorganized Debtors.

(v)   <u>Other Appropriate Provisions (11 U.S.C. § 1123(b)(5)–(6))</u>.  The Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (1) distributions to Holders of Claims and Interests, including Holders of Secured Claims, (2) resolution of Disputed Claims and Interests, (3) allowance of certain Claims, (4) releases by the Debtors of certain parties, (5) releases by certain third parties, (6) exculpation of certain parties, (7) the injunction of certain Claims and causes of action in order to implement the discharge, release and exculpation provisions, and (8) retention of this Court's jurisdiction, thereby satisfying the requirements of sections 1123(b)(5) and (6) of the Bankruptcy Code.

i.   <u>Cure of Defaults (11 U.S.C. § 1123(d))</u>.  <u>Article V.C</u> of the Plan, provides for the satisfaction of monetary defaults under each Executory Contract and Unexpired Lease to be assumed (or assumed and assigned) pursuant to the Plan.  The Debtors have provided notice of such assumption (or assumption and assignment) and proposed cure amounts to the applicable third parties.  As such, the Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to assumed Executory Contracts and Unexpired Leases in compliance with section 365(b)(1) of the Bankruptcy Code.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

**P.**    **The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**

19.    The Debtors have complied with the applicable provisions of the Bankruptcy

Code, as required by section 1129(a)(2) of the Bankruptcy Code.  Specifically:

    a.    the Debtors are eligible debtors under section 109 of the Bankruptcy Code and are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code;

    b.    the Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

    c.    the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order in transmitting the Confirmation Materials and related notices and in soliciting and tabulating the votes on the Plan.

**Q.**    **Good Faith Proposal of the Plan (11 U.S.C. § 1129(a)(3)).**

20.    The Debtors have proposed the Plan (including the Plan Documents (defined

herein) and all other documents necessary or appropriate to effectuate the Plan) in good faith and

not by any means forbidden by law.  In determining that the Plan has been proposed in good

faith, the Court has examined the totality of the circumstances surrounding the filing of the

Chapter 11 Cases and the formulation of the Plan.  The Debtors' good faith is evident from the

facts and record of the Chapter 11 Cases, the Disclosure Statement, the Confirmation

Declarations, and the record of the Confirmation Hearing.  The Plan was proposed with the

legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a

successful restructuring of the Debtors.  The Plan was the product of extensive negotiations

conducted at arm's length among the Debtors and their key stakeholders, including (a) the

members of the Ad Hoc First Lien Committee (including in their respective capacities as Holders

of the First Lien Notes Claims and/or Holders of the Second Lien Notes Claims, as applicable);

(b) the Committee and the Committee Members; (c) the DIP Agents; (d) the DIP Lenders; (e) the

First Lien Notes Indenture Trustee; (f) the FILO Notes Indenture Trustee; (g) the Second Lien

Notes Indenture Trustee; (j) Brigade; and (k) the Allianz Parties. Further, the Plan's classification, indemnification, settlement, discharge, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors to implement the Global Settlement and consummate their value-maximizing Plan. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**R.      Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

21.    Payments made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, including all Professional Fee Claims, the FILO Notes Professional Fees and Expenses, the Transaction Expenses, and the Stipulated Administrative Expense Settlement Claims have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

**S.      Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**

22.    The Debtors have disclosed the identity and affiliations of all persons proposed to serve on the Reorganized Cenveo Board and the officers of the Reorganized Debtors at or prior to the Confirmation Hearing. The Plan complies with section 1129(a)(5)(A)(ii) of the Bankruptcy Code because the appointment of the identified members of the Reorganized Cenveo Board and officers of the Reorganized Debtors is consistent with the interests of the creditors and equity security holders and with public policy. Accordingly, the Debtors have satisfied section 1129(a)(5) of the Bankruptcy Code.

**T.**    **No Rate Changes (11 U.S.C. § 1129(a)(6)).**

23.    Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Chapter 11

Cases.    The Plan proposes no rate change subject to the jurisdiction of any governmental

regulatory commission.

**U.**    **Best Interests of Holders of Claims and Interests (11 U.S.C. § 1129(a)(7)).**

24.    Each Holder of an Impaired Claim or Interest either has accepted the Plan or will

receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of

the Effective Date, that is not less than the amount that such Holder would receive or retain if the

Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

25.    The liquidation analysis attached as **Exhibit D** to the Disclosure Statement

(the "Liquidation Analysis") and the other evidence related thereto in support of the Plan that

was proffered or adduced at or prior to the Confirmation Hearing or in the Koza Declaration (a)

are reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence was

prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and

assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of

Allowed Claims and Allowed Interests in every Class will recover as much or more under the

Plan on account of such Claim or Interest, as of the Effective Date, than the amount such Holder

would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

Accordingly, the Plan satisfies the "best interest of creditors" test under section 1129(a)(7) of the

Bankruptcy Code.

**V.**    **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**

26.    Classes 1, 2 and 4 are Unimpaired by the Plan pursuant to section 1124 of the

Bankruptcy Code and, accordingly, Holders of Claims in such Classes are conclusively

presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.    As

reflected in the Voting Certification, Classes 3, 5A, 5B, 6 and 9 are Impaired by the Plan.

Classes 3, 5A, and 5B at each Debtor have voted to accept the Plan.  Classes 7 and 8 are deemed

Impaired or Unimpaired by the Plan pursuant to section 1124 of the Bankruptcy Code and,

accordingly, Holders of Claims in Classes 7 and 8 are conclusively presumed to have accepted

the Plan pursuant to section 1126(f) of the Bankruptcy Code or are conclusively deemed to have

rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Claims in

Classes 6 and 9 (if any) will not receive or retain any property on account of their Claims and,

accordingly, such Claims are Impaired and such Holders are conclusively deemed to have

rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  In addition, Class 6 is a

vacant Class of Claims.  Pursuant to Article III.E of the Plan, because Class 6 is a vacant Class,

this Class is deemed eliminated from the Plan for purposes of voting to accept or reject the Plan

under Bankruptcy Code section 1129(a)(8).  Accordingly, the Plan satisfies the requirements of

section 1129(a)(8) of the Bankruptcy Code as to all Debtors.

**W.**    **Treatment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, Other Secured Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).**

27.    The treatment of Administrative Claims, Professional Fee Claims, DIP Facilities

Claims, Other Secured Claims, Priority Tax Claims, and Other Priority Claims pursuant to

Articles II and III of the Plan satisfies the requirements of, and complies in all respects with,

section 1129(a)(9) of the Bankruptcy Code.  Accordingly, the Debtors have satisfied the

requirements of section 1129(a)(9) of the Bankruptcy Code.

**X.**    **Acceptance By at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).**

28.    Claims in Classes 3, 5A, and 5B are Impaired and entitled to vote under the Plan.

Classes 3, 5A, and 5B at each Debtor have voted to accept the Plan, as established by the Voting

Certification.  As set forth in the Voting Certification, Classes 3, 5A, and 5B voted to accept the

Plan at each Debtor.  Accordingly, the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

**Y.      Feasibility (11 U.S.C. § 1129(a)(11)).**

29.      The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting the feasibility of the Plan proffered or adduced by the Debtors at or before the Confirmation Hearing, including the Confirmation Declarations (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, and/or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible and Confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or the Reorganized Debtors, as applicable; and (e) establishes the Debtors or the Reorganized Debtors, as applicable, will have sufficient funds to meet their obligations under the Plan.

**Z.      Payment of Statutory Fees (11 U.S.C. § 1129(a)(12)).**

30.      As set forth in Article II.E of the Plan, all fees payable pursuant to section 1930(a) of title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors.  On and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each Debtor shall remain obligated to pay the U.S. Trustee Fees until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.  Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**AA.    Retiree Benefits (11 U.S.C. § 1129(a)(13)).**

31.    As set forth in Article IV.R of the Plan, from and after the Effective Date, all "retiree benefits" (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid by the Reorganized Debtors in accordance with applicable law.  Accordingly, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

**BB.    Non-Applicability of Certain Sections (Sections 1129(a)(14), (15), and (16)).**

32.    Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.  The Debtors owe no domestic support obligations, are not individuals, and are moneyed, business, or commercial corporations or trusts.

**CC.    Confirmation of Plan Over Non-Acceptance of Impaired Classes
(11 U.S.C. § 1129(b)).**

33.    The Plan may be confirmed as to Classes 6 and 9 (collectively, the "Rejecting Classes") pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding that the requirements of section 1129(a)(8) have not been met with respect to the Rejecting Classes, because the Debtors have demonstrated by a preponderance of the evidence that the Plan (a) satisfies all of the other requirements of section 1129(a) of the Bankruptcy Code and (b) does not "discriminate unfairly" and is "fair and equitable" with respect to the Holders of Claims and Interests in the Rejecting Classes.

34.    The Plan does not "discriminate unfairly" against any Holders of Claims and Interests in the Rejecting Classes.  The treatment of such Holders is proper because all similarly situated Holders of Claims and Interests will receive substantially similar treatment, and the Debtors have a valid rationale, including for the rationales articulated in the Confirmation Brief, for the Plan's classification scheme and the treatment provided for different Classes.

35.    The Plan is also "fair and equitable" with respect to the Rejecting Classes. Specifically, no holder of any Interest that is junior to Class 9 (Cenveo Interests) is receiving a distribution under the Plan, and no Class of Claims or Interests senior to Class 9 (Cenveo Interests) is receiving more than full recovery on account of its Claims or Interests.   Moreover, Class 6 (Section 510(b) Claims) is vacant, and therefore, the absolute priority rule does not apply with respect to the treatment of such Claims under <u>Article III.E</u> of the Plan.

36.    The Plan therefore satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed despite the fact that the Rejecting Classes are deemed to reject the Plan.

**DD.    <u>Only One Plan (11 U.S.C. § 1129(c)).</u>**

37.    The Plan is the only plan filed in the Chapter 11 Cases, and, accordingly, satisfies section 1129(c) of the Bankruptcy Code.

**EE.    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d)).</u>**

38.    The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, and there has been no filing by any Governmental Unit asserting any such attempted avoidance.   The Plan, therefore, satisfies section 1129(d) of the Bankruptcy Code.

**FF.    <u>Not Small Business Cases (11 U.S.C. § 1129(e)).</u>**

39.    None of the Chapter 11 Cases are small business cases, as that term is defined in the Bankruptcy Code, and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**GG.    Satisfaction of Confirmation Requirements.**

40.    Based on the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Debtors, as applicable, satisfy all of the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**HH.    Valuation.**

41.    The valuation analysis attached as **Exhibit E** to the Disclosure Statement (the "Valuation Analysis") and the evidence adduced at the Confirmation Hearing and in the Augustine Declaration, including the estimated post-emergence enterprise value of the Reorganized Debtors, are reasonable and credible.  All parties in interest have been given the opportunity to challenge the Valuation Analysis.  The Valuation Analysis (a) is reasonable, persuasive, and credible as of the date such analysis was prepared, presented, or proffered, and (b) uses reasonable and appropriate methodologies and assumptions.

**II.    Plan Documents.**

42.    The terms of the Plan, including, without limitation, the Plan Supplement, the Restructuring Documents, and all exhibits and schedules thereto, and all other documents filed in connection with the Plan, or executed or to be executed in connection with the transactions contemplated by the Plan and the Plan Supplement, including the Description of Restructuring Transactions, the Exit Facilities Documents, and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications (collectively, the "Plan Documents") are incorporated by reference, are approved in all respects, and constitute an integral part of this Confirmation Order.

**JJ.    Binding and Enforceable.**

43.    The Plan and the Plan Documents have been negotiated in good faith and at arm's length and, subject to the occurrence of the Effective Date, shall bind any Holder of a Claim or

Interest and such Holder's respective successors and assigns, whether or not the Claim or Interest is Impaired under the Plan, whether or not such Holder has accepted the Plan, and whether or not such Holder is entitled to a distribution under the Plan. The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto (including, without limitation, each of the New Cenveo Entities (as defined below)), as applicable) and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

**KK.**    **Vesting of Assets.**

44.    Except as otherwise provided in the Plan, the Plan Documents or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement (including, without limitation, the Exit Facilities Documents), on the Effective Date, all property in each Estate, all Causes of Action, all Executory Contracts and Unexpired Leases assumed by any of the Debtors, and any property acquired by any of the Debtors, including Interests held by the Debtors in non-Debtor subsidiaries, shall, pursuant to the Plan, vest in each respective Reorganized Debtor and/or New Cenveo Entity (as successor by merger) as may be set forth in the Plan and the Description of Restructuring Transactions set forth in the Plan Supplement, and in each case, free and clear of all Liens, Claims, charges, or other encumbrances (except for Liens, Claims, charges, or other encumbrances arising under the Exit Facilities, or any Other Secured Claims that are Reinstated pursuant to the Plan, or as otherwise expressly provided by the Plan or Confirmation Order). Except as otherwise provided in the Plan, the Plan Documents or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement (including, without limitation, the Exit Facilities Documents), on and after the Effective Date, each Reorganized Debtor and/or New Cenveo Entity may operate its business and may use,

acquire, or dispose of property, issue additional debt or equity interests, and compromise or settle any Claims, Interests, or Causes of Action, including with respect to the waiver of Avoidance Claims in <u>Article IV.S</u> of the Plan, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  Notwithstanding anything to the contrary in the Plan, the Unimpaired Claims against a Debtor shall remain obligations solely of such Debtor or such Reorganized Debtor and/or New Cenveo Entity and shall not become obligations of any other Debtor, Reorganized Debtor and/or New Cenveo Entity by virtue of the Plan, the Chapter 11 Cases, or otherwise.

## LL.   <u>Executory Contracts and Unexpired Leases.</u>

45.   The Debtors have exercised sound business judgment in determining whether to reject, assume, or assume and assign each of their Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, <u>Article V</u> of the Plan, and as set forth in the Plan Supplement.  Except as set forth herein and/or in separate orders entered by the Court relating to assumption of Executory Contracts or Unexpired Leases, consistent with the Plan Supplement, the Debtors have Cured or provided adequate assurances that the Debtors and/or the Reorganized Debtors will Cure defaults (if any) under or relating to each Executory Contract or Unexpired Lease assumed under the Plan and, for each Executory Contract or Unexpired Lease being assumed and assigned under the Plan, including pursuant to the Description of Restructuring Transactions, such assignee has provided adequate assurance of future performance as required under section 365(f)(2)(B).

## MM.   <u>Discharge, Compromise, Settlement, Release, Exculpation, and Injunction Provisions.</u>

46.   The Court has jurisdiction under sections 157(a) and (b) and 1334(a) and (b) of title 28 of the United States Code to approve the discharge, compromises, settlements, releases,

exculpations, and injunctions set forth herein and in <u>Article VIII</u> of the Plan.  Sections 105(a) and

1123(b) of the Bankruptcy Code permit the issuance of the injunctions and approval of the

releases, exculpations, and injunctions set forth herein and in <u>Article VIII</u> of the Plan.  Based

upon the record of the Chapter 11 Cases and the evidence proffered or adduced at the

Confirmation Hearing, the Court finds that the discharge, compromises, settlements, releases,

exculpations, and injunctions set forth herein and in <u>Article VIII</u> of the Plan are consistent with

the Bankruptcy Code and applicable law.  Further, the discharge, compromises, settlements,

releases, exculpations, and injunctions contained herein and in <u>Article VIII</u> of the Plan are

integral components of the Plan.  The discharge, compromises, settlements, releases,

exculpations, and injunctions set forth herein and in <u>Article VIII</u> of the Plan are hereby approved

and authorized in their entirety.

**NN.**    **<u>Debtor Release.</u>**

47.    The releases of claims and causes of action by the Debtors described in

<u>Article VIII.C</u> of the Plan, in accordance with section 1123(b) of the Bankruptcy Code

(the "<u>Debtor Release</u>"), represent a valid exercise of the Debtors' business judgment under

Bankruptcy Rule 9019.  The Debtors' or the Reorganized Debtors' pursuit of any such claims

against the Released Parties is not in the best interest of the Estates' various constituencies

because the costs involved would likely outweigh any potential benefit from pursuing such

claims.  The Debtor Release is fair and equitable and complies with the absolute priority rule.

48.    The Debtor Release furthermore is an integral part of the Plan and the Global

Settlement and is in the best interests of the Debtors' Estates as a component of the

comprehensive settlement implemented under the Plan. The low probability of success in

litigation with respect to the released causes of action supports the Debtor Release.  The Plan,

including the Debtor Release, was negotiated before and after the Petition Date by sophisticated

parties represented by able counsel and financial advisors.  The Debtor Release is therefore the result of an arm's-length negotiation process.

49.    The Debtor Release appropriately offers protection to parties that participated in the Debtors' restructuring process.  Specifically, the Released Parties under the Plan made significant concessions and contributions to the Chapter 11 Cases, including, as applicable, providing postpetition financing, providing exit financing,  actively supporting the Plan and the Chapter 11 Cases, and waiving substantial rights and Claims against the Debtors under the Plan. The Debtor Release for the Debtors' directors and officers is appropriate because the Debtors' directors and officers share an identity of interest with the Debtors, supported the Plan and the Chapter 11 Cases, actively participated in meetings, negotiations, and implementation during the Chapter 11 Cases, and have provided other valuable consideration to the Debtors to facilitate the Debtors' reorganization.

50.    The scope of the Debtor Release is appropriately tailored to the facts and circumstances of the Chapter 11 Cases.  In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan and the Global Settlement, the Debtor Release is appropriate.

**OO.    Third Party Release.**

51.    The release by the Releasing Parties (the "Third Party Release"), set forth in Article VIII.D of the Plan is an essential provision of the Plan.  The Third Party Release is: (a) consensual; (b) essential to the Plan and the Global Settlement; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good-faith settlement and compromise of the claims and causes of action released by the Third Party Release; (e) materially beneficial to, and in the best interests of, the Debtors, their Estates and their stakeholders, and important to the overall objectives of the Plan; (f) fair, equitable, and

reasonable; (g) given and made after due notice and opportunity for a hearing, as well as a clear opportunity to opt-out of such Release; (h) not the subject of any objection to the Plan, which Plan was overwhelmingly accepted by those entitled to vote to accept or reject the Plan (i) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to the Third Party Release against any of the Released Parties; and (j) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

52.    The Third Party Release is an integral part of the Plan and the Global Settlement. Like the Debtor Release, the Third Party Release facilitated participation in both the Plan and the Debtors' chapter 11 process generally.  The Third Party Release was instrumental in developing a Plan and reaching the Global Settlement that maximizes value for all of the Debtors' stakeholders, and was critical in incentivizing the parties to support the Plan and the Global Settlement and preventing potentially significant and time-consuming litigation regarding the parties' respective rights and interests.  As such, the Third Party Release appropriately offers certain protections to parties who constructively participated in the Debtors' restructuring process by, among other things, supporting the Plan and the Global Settlement.  Furthermore, the Third Party Release is consensual or is otherwise appropriate under controlling law.

53.    The scope of the Third Party Release is appropriately tailored to the facts and circumstances of the Chapter 11 Cases, and parties in interest received due and adequate notice of the Third Party Release.  Among other things, the Plan and Disclosure Statement provide appropriate and specific disclosure and notice with respect to the claims and causes of action that are subject to the Third Party Release, as well as the opportunity to opt out of the Release, and no other disclosure or notice is necessary.  The Third Party Release is specific in language, integral to the Plan, and given for adequate consideration.  In light of, among other things, the value

provided by the Released Parties to the Debtors' Estates and the critical nature of the Third Party Release to the Plan and the Global Settlement, the Third Party Release is appropriate.

**PP.    Exculpation.**

54.    The exculpation provisions set forth herein and in <u>Article VIII.E.</u> of the Plan were proposed in good faith and are essential to the Plan and the Global Settlement.  The record in the Chapter 11 Cases fully supports the exculpation provisions, and such provisions are appropriately tailored to protect the Exculpated Parties from inappropriate litigation and to exclude actions determined by Final Order to have constituted actual fraud, gross negligence or willful misconduct.

**QQ.    Injunction.**

55.    The injunction provisions set forth herein and in <u>Article VIII.F</u> of the Plan (a) are essential to the Plan and the Global Settlement; (b) are necessary to preserve and enforce the discharge and releases set forth in <u>Articles VIII.B</u>, <u>VIII.C</u>, and <u>VIII.D</u> of the Plan, the exculpation provisions in <u>Article VIII.E</u> of the Plan, and the compromises and settlements implemented under the Plan and the Global Settlement; and (c) are appropriately tailored to achieve that purpose.

56.    The injunction provisions set forth herein and in <u>Article VIII.F</u> of the Plan: (a) are within the jurisdiction of this Court under 28 U.S.C. §§ 157(a)-(b) and 1334(a), 1334(b), and 1334(d); (b) are an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) are an integral element of the transactions incorporated into the Plan and the Global Settlement; (d) confer material benefits on, and are in the best interests of, the Debtors, the Estates, and their creditors and other stakeholders; (e) are important to the overall objectives of the Plan and the Global Settlement, the intent of which is to finally resolve all claims or causes of action among or against the parties in interest in the Chapter 11 Cases with

28

respect to the Debtors; and (f) are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, and other applicable law. The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the injunction provisions set forth herein and in Article VIII.F of the Plan.

**RR.     Indenture Trustees.**

57.     Based upon a review of the record, the First Lien Notes Indenture Trustee, the FILO Notes Indenture Trustee, the Second Lien Notes Indenture Trustee, and the Unsecured Notes Indenture Trustee (collectively, the "Indenture Trustees") diligently and in good faith, discharged their duties and obligations pursuant to the First Lien Notes Indenture, the FILO Notes Indenture, the Second Lien Notes Indenture, and the Unsecured Notes Indenture (collectively, the "Indentures") and otherwise conducted themselves with respect to all matters in any way related to the First Lien Notes Claims, FILO Notes Claims, Second Lien Notes Claims, and Unsecured Notes Claims with the same degree of care and skill that a prudent person would exercise or use under the circumstances in the conduct of his or her own affairs. Accordingly, the Indenture Trustees have discharged their duties fully in accordance with the applicable Indentures.

**SS.     Retention of Jurisdiction.**

58.     Except as otherwise provided in the Plan, any of the other Plan Documents or this Confirmation Order, the Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases and the Plan, including, but not limited to, the matters set forth in Article XI of the Plan.

**BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

**A.    Confirmation.**

59.    The Plan, together with the other Plan Documents, shall be, and hereby are, confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan Documents are incorporated by reference into, and are an integral part of, the Plan and this Confirmation Order and are authorized and approved, and the Debtors are authorized to implement their provisions and consummate the Plan and the Plan Documents, including taking all actions necessary, advisable, or appropriate to finalize the Plan Documents (with the consent of the Requisite First Lien Creditors, not to be unreasonably withheld, conditioned, or delayed) and to effectuate the Plan and the Restructuring Transactions, without any further authorization except as may be expressly required by the Plan or this Confirmation Order.

**B.    Objections.**

60.    All objections, responses, reservations, statements, and comments in opposition to the Plan, other than those resolved, adjourned, or withdrawn with prejudice prior to, or on the record at, the Confirmation Hearing are overruled on the merits in all respects for the reasons stated by the Court in its bench rulings at the Confirmation Hearing.  All withdrawn objections, if any, are deemed withdrawn with prejudice.

**C.    Omission of Reference to Particular Plan Provisions.**

61.    The failure to specifically describe or include any particular provision of the Plan or the Plan Documents in this Confirmation Order shall not diminish or impair the effectiveness of such provision, and such provision shall have the same validity, binding effects, and enforceability as every other provision of the Plan and the Plan Documents.

**D.**    **Deemed Acceptance of the Plan as Modified.**

62.    In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are presumed to accept the Plan, notwithstanding the Plan Modifications. No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan Modifications. All modifications to the Plan or Plan Supplement made after the Voting Deadline, including the Plan Modifications, are hereby approved, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

**E.**    **Plan Implementation.**

63.    General Authorization. The transactions described in the Plan, the Restructuring Support Agreement, the Plan Documents, and this Confirmation Order, including the Restructuring Transactions, are hereby approved. Whether prior to, on or after the Effective Date, as applicable, and without any further order of the Court, other authority, or corporate action, the Debtors, the Reorganized Debtors and the New Cenveo Entities (or any agent on behalf of parties entitled to receive Reorganized Cenveo Equity Interests), as applicable, and their respective directors, managers, officers, employees, members, agents (including stock transfer agents and Distribution Agents), attorneys, financial advisors, and investment bankers, are authorized and empowered pursuant to section 1142(b) of the Bankruptcy Code and other applicable non-bankruptcy law to, and shall, (a) grant, issue, execute, deliver, file, or record any agreement, document, or security, and the documents contained in the Plan or the other Plan Documents or described in the definition of Restructuring Transactions and the Description of Restructuring Transactions (as modified, amended, and supplemented pursuant to the provisions of the Plan governing such modifications, amendments, and supplements), or any other documents related thereto and (b) take any action necessary, advisable, or appropriate to

implement, effectuate, and consummate the Plan, the Plan Documents, the Restructuring

Transactions (as set forth in the Description of Restructuring Transactions or otherwise), or this

Confirmation Order, including, but not limited to, the formation of entities which, on or shortly

before the Effective Date, will be renamed Cenveo Enterprises, Inc., CWL Enterprises, Inc.,

Cenveo Worldwide Limited, and Reorganized Lightning Labels, LLC (each, a "New Cenveo

Entity", and, collectively, the "New Cenveo Entities"),[4] as set forth in the Description of

Restructuring Transactions, the transactions and mergers set forth in the Description of

Restructuring Transactions, the execution, delivery, and filing, if applicable, of the Exit Facilities

Documents (and any applicable intercreditor agreement), the Reorganized Cenveo

Organizational Documents, Shareholders Agreement, Management Incentive Plan, New

Management Agreements, KEIP, Burton, Sr. Advisory Services Agreement, Transition

Agreement, Professional Fee Escrow, the General Unsecured Claims Cash Pool Account, any

documentation related to the Reorganized Cenveo Equity Interests or the Restructuring

Transactions, and any actions necessary, advisable, or appropriate to effectuate the issuance

and/or distribution of any shares of the Reorganized Cenveo Equity Interests to be issued

pursuant to the Plan (including issuing such shares of Reorganized Cenveo Equity Interests to

any stock transfer agent as a nominee for the Persons entitled to receive such shares to be held in

a reserve account until such Persons are identified, whereupon such stock transfer agent shall be

authorized and directed to distribute such shares to such Persons in accordance with such

instructions as are agreed upon between such stock transfer agent and the Reorganized Debtors

(or any of them)).  All such actions taken or caused to be taken shall be deemed to have been

authorized and approved by the Court without further approval, act, or action under any

---

[4]    Notwithstanding the description contained in the Description of Restructuring Transactions, Discount Labels, LLC shall be merged into Cenveo Corporation on or prior to the Effective Date.

applicable law, order, rule, or regulation, including, among other things, (x) the incurrence of all obligations by the Debtors, the Reorganized Debtors, and the New Cenveo Entities (as applicable), in each case, as contemplated by the Plan, the Restructuring Transactions, the Exit Facilities Documents, the Plan Documents, or this Confirmation Order, as well as the making of all distributions under the Plan, the Plan Documents, or this Confirmation Order; and (y) entering into any and all transactions, contracts, leases, instruments, releases, and other documents and arrangements permitted by applicable law, order, rule, or regulation.   The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of the Debtors, the Reorganized Debtors, or the New Cenveo Entities, as applicable, or any officer, director, agent, or manager thereof, to take any and all actions necessary, advisable, or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan, the Plan Documents, or this Confirmation Order pursuant to section 1142(b) of the Bankruptcy Code.   Pursuant to section 1142 of the Bankruptcy Code, to the extent that, under applicable nonbankruptcy law or the rules of any stock exchange, any of the foregoing actions that would otherwise require approval of the equity holders, directors, or managers (or any equivalent body) of the Debtors, the Reorganized Debtors, or the New Cenveo Entities, as applicable, such approval shall be deemed to have occurred and shall be in effect from and after the Effective Date without any further action by the equity holders, directors, or managers (or any equivalent body) of the Debtors or the Reorganized Debtors.   Prior to, on, or as reasonably practicable after the Effective Date, the Debtors, the Reorganized Debtors, or the New Cenveo Entities shall, if necessary, prudent or advisable, file any documents required to be filed in such jurisdictions so as to effectuate the provisions of the Plan, the Plan Documents, and the Restructuring Transactions.

Any or all documents contemplated herein shall be accepted by each of the respective filing offices and recorded in accordance with applicable law.  All counterparties to any documents described in this paragraph are hereby directed to execute such documents as may be required or provided by such documents, without any further order of the Court.  Each of the Plan Documents, once executed, constitutes a legal, valid, binding, and authorized obligation of the respective parties thereto (including, without limitation, the Debtors, the Reorganized Debtors, and/or the New Cenveo Entities, as applicable) enforceable in accordance with its terms, and the terms contained in each such executed Plan Document shall supersede any description of such terms contained in the Plan or the Plan Supplement or otherwise set forth in a term sheet or unexecuted version of such document.  The Plan Documents are hereby approved, adopted, and effective upon the Effective Date.  The definition of "Reorganized Debtors" as defined in the Plan shall include the New Cenveo Entities.

64.    No Action.  Pursuant to section 1142(b) of the Bankruptcy Code and other applicable law, this Confirmation Order shall constitute authorization for the Debtors, the Reorganized Debtors, New Cenveo Entities, or the Cenveo Acquiring Entities (or any agent on behalf of parties entitled to receive Reorganized Cenveo Equity Interests), as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Plan Documents, the Restructuring Transactions (as set forth in the Description of Restructuring Transactions or otherwise), this Confirmation Order, and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, the Plan Documents, the Restructuring Transactions, or this Confirmation Order, and the respective directors, managers, stockholders, or members of the Debtors or the Reorganized Debtors shall not be required to take any actions in connection with

the implementation of the Plan, the Plan Documents, the Restructuring Transactions, or this Confirmation Order.

**F.    Binding Effect.**

65.    Effective as of entry of this Confirmation Order, but subject to the occurrence of the Effective Date (and, with respect to the Exit Facilities, subject to effectiveness thereof as set below and in the Description of Restructuring Transactions), the Plan, the Plan Documents, and this Confirmation Order shall be effective, enforceable and binding upon:  (a) the Debtors; (b) the Reorganized Debtors; (c) the New Cenveo Entities and/or the Cenveo Acquiring Entities, as applicable; (d) any Holder of a Claim or Interest and such Holder's respective successors and assigns (whether or not:  (i) the Claim or Interest is Impaired under the Plan; (ii) such Holder has accepted or rejected the Plan; (iii) such Holder has failed to vote to accept or reject the Plan; (iv) such Holder is entitled to a distribution under the Plan; (v) such Holder will receive or retain any property or interests in property under the Plan; and (vi) such Holder has filed a Proof of Claim in the Chapter 11 Cases); (e) all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan; (f) each Entity acquiring property under the Plan; and (g) any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors or the Reorganized Debtors.  The Plan, the Plan Documents, and this Confirmation Order constitute legal, valid, binding, and authorized obligations of the respective parties thereto (including, without limitation, the Debtors, the Reorganized Debtors, and/or the New Cenveo Entities, as applicable) and shall be enforceable in accordance with their terms.  Pursuant to section 1142(a) of the Bankruptcy Code, the Plan, the Plan Documents, and this Confirmation Order shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

### G.    Plan Classification Controlling.

66.    The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan:  (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.  All rights of the Debtors and the Reorganized Debtors, as applicable, to challenge, object to, or seek to reclassify Claims and Interests are expressly reserved.

### H.    Effective Date.

67.    Except as otherwise provided herein, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Documents, and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, Cenveo Acquiring Entities and any and all Holders of Claims against or Interests in the Debtors (irrespective of whether their Claims or Interests are presumed to have accepted or deemed to have rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors or the Reorganized Debtors.

I.    **Restructuring Transactions.**

68.    The Debtors, the Reorganized Debtors, and the New Cenveo Entities, as applicable, are authorized to implement and consummate the Restructuring Transactions (as may be modified, amended, and supplemented pursuant to the provisions of the Plan governing such modifications, amendments, and supplements) pursuant to the Plan, the Plan Documents, and this Confirmation Order, and are authorized to execute and deliver all necessary documents or agreements required to perform their obligations thereunder.  The Restructuring Transactions pursuant to the Plan and the Plan Documents are approved and authorized in all respects.  The Debtors, the Reorganized Debtors, and the New Cenveo Entities (and any agent on behalf of parties entitled to receive Reorganized Cenveo Equity Interests), as applicable, are authorized and directed, without the need for any future corporate action, to take all actions necessary, appropriate, or desirable to enter into, implement, and consummate the contracts, instruments, releases, agreements, or other documents created or executed in connection with the Plan, the Plan Documents, and the Restructuring Transactions, including, without limitation, (a) the formation of the New Cenveo Entities, and (b) the mergers, actions and other transactions set forth in the Description of Restructuring Transactions.  In accordance with section 1142 of the Bankruptcy Code and applicable nonbankruptcy law, such actions may be taken without further action by stockholders, members, partners, managers, or directors of the Debtors, the Reorganized Debtors, or the New Cenveo Entities.  As more fully set forth in the Description of Restructuring Transactions, on the Effective Date, subject to the satisfaction of the conditions precedent to effectiveness set forth in each of the Exit Facilities Documents (other than the conditions to substantial consummation set forth below), Cenveo Corporation and each of the Loan Parties (as the case may be) to each of the DIP ABL Credit Facilities Documents and the DIP Term Facility Documents (except for Cenveo, Inc.) shall, prior to the merger and subject to

a joint determination that all of the conditions to the substantial consummation of the Plan have

been satisfied or waived (other than the effectiveness and, if applicable, funding under the Exit

Facilities, the Merger and the Equity Distribution (as defined in the Description of Restructuring

Transactions), execute and deliver each of the Exit ABL Facility Documents and the Exit Term

Loan Facility Documents, respectively, which subject to the consummation of the Merger and

the Equity Distribution, shall be deemed to be effective immediately prior to the effective time of

the Merger.

69.     For the avoidance of doubt, the term "Restructuring Transactions" shall include

all actions and transactions contemplated in the Description of Restructuring Transactions, and

the Plan shall be amended and superseded to the extent necessary to give effect to the

Description of Restructuring Transactions (as may be further amended, modified or

supplemented, without affecting distributions to creditors under the Plan, subject to the consent

of the Debtors, the Exit ABL Agent and the Requisite First Lien Creditors, in each case, such

consent not to be unreasonably withheld or delayed) and this Confirmation Order.

**J.     Distributions.**

70.     All distributions pursuant to the Plan shall be made in accordance with <u>Article VI</u>

of the Plan, and such methods of distribution are approved.  The Reorganized Debtors shall have

no duty or obligation to make distributions to any Holder of an Allowed Claim unless and until

such Holder executes and delivers, in a form acceptable to the Reorganized Debtors, any and all

documents applicable to such distributions in accordance with <u>Article VI</u> of the Plan.

**K.     Securities Registration Exemption.**

71.     Except with respect to the Reorganized Cenveo Equity Interests underlying the

Management Incentive Plan, all shares or units of Reorganized Cenveo Equity Interests issued

under the Plan will be issued without registration under the Securities Act or any similar federal,

state, or local law in reliance upon section 1145 of the Bankruptcy Code.  All shares or units of

Reorganized Cenveo Equity Interests issued under the Plan in reliance upon section 1145 of the

Bankruptcy Code are exempt from, among other things, the registration requirements of Section

5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior

to or in connection with the offering, issuance, distribution, or sale of Securities.   The

Reorganized Cenveo Equity Interests issued pursuant to section 1145 of the Bankruptcy Code:

(a) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and

(b) are freely tradable and transferable by any holder thereof that (1) is not an "affiliate" of the

Reorganized Debtors as defined in Rule 144(a)(1) under the Securities Act, (2) has not been such

an "affiliate" within ninety (90) days of such transfer, (3) has not acquired the Reorganized

Cenveo Equity Interests from an "affiliate" within one year of such transfer, and (4) is not an

entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy

Code, subject (in the case of the Reorganized Cenveo Equity Interests) to any applicable

restrictions on transfer as may be set forth in the New Organizational Documents or the

Shareholders Agreement.  All of the Reorganized Cenveo Equity Interests issued to Holders of

First Lien Notes Claims hereunder, in each case in exchange for such Claims, shall be issued in

reliance on section 1145 of the Bankruptcy Code, as applicable hereunder.  Reorganized Cenveo

Equity Interests underlying the Management Incentive Plan will be issued pursuant to another

available exemption from registration under the Securities Act and other applicable law.

72.     Notwithstanding anything to the contrary in the Plan or this Confirmation Order,

neither DTC nor any stock transfer agent may require a legal opinion regarding the validity of

any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the

Reorganized Cenveo Equity Interests are exempt from registration.

**L.**    **Retained Assets.**

73.    The definition of "Cenveo Acquiring Entities" as defined in the Plan is amended as follows: "*Cenveo Acquiring Entities*" means one or more entities established by or on behalf of any parties entitled to receive Reorganized Cenveo Equity Interests pursuant to the Plan, which entities shall acquire (by merger or in any other manner) all or a portion of the assets of Cenveo, Inc., and/or its direct and indirect subsidiaries in a Taxable Transaction, as set forth in the Description of Restructuring Transactions, and any direct or indirect parent of any such entity."

74.    To the extent that the retention by the Debtors, the Reorganized Debtors, the Cenveo Acquiring Entities and/or the New Cenveo Entities (as applicable), of assets held immediately prior to emergence in accordance with the Plan is deemed, in any instance, to constitute a "transfer" of property, such transfer of property to the Debtors or the Reorganized Debtors, the Cenveo Acquiring Entities and/or the New Cenveo Entities (as applicable), (a) is or shall be a legal, valid, and effective transfer of property; (b) vests or shall vest the Debtors, the Reorganized Debtors, the Cenveo Acquiring Entities and/or the New Cenveo Entities (as applicable), with good title to such property, free and clear of all liens, charges, Claims, encumbrances, or interests, except as expressly provided in the Plan, the other Plan Documents or this Confirmation Order; (c) does not and shall not constitute an avoidable transfer under the Bankruptcy Code or under applicable nonbankruptcy law; and (d) does not and shall not subject the Debtors, the Reorganized Debtors, the Cenveo Acquiring Entities and/or the New Cenveo Entities (as applicable), to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including by laws affecting successor or transferee liability.

**M.**     <u>**Treatment of Executory Contracts and Unexpired Leases.  BAR DATE**</u>

75.     The assumption (or assumption and assignment) and rejection of Executory Contracts and Unexpired Leases as set forth in <u>Article V</u> of the Plan is hereby authorized. Assumption (or assumption and assignment) of the Executory Contracts and Unexpired Leases listed in the Assumed Executory Contracts and Unexpired Leases Schedule are hereby authorized.

76.     To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including, without limitation, any "change of control", "assignment", or similar provision), then such provision shall be deemed modified or stricken such that the transactions contemplated by the Plan and the Plan Documents, including the Restructuring Transactions, shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default, breach, violation or acceleration rights with respect thereto.  For the avoidance of doubt, no Restructuring Transaction shall be deemed to violate the terms of any assumed Executory Contract or Unexpired Lease of non-residential real property assumed in connection with the Plan.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Bankruptcy Court on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Debtors.

77.     The Debtors or the Reorganized Debtors, as applicable, may alter, amend, modify, or supplement (a) the Rejected Executory Contracts and Unexpired Leases Schedules, and/or (b) the Assumed Executory Contract/Unexpired Lease Schedule, other than with respect to the Citibank Sublease, which may not be removed from the Assumed Executory Contract/Unexpired

Lease Schedule without the prior written consent of the Committee (prior to the Effective Date) or the Claims Oversight Monitor (following the Effective Date), in each case, at any time through and including the date that is sixty (60) days after the Effective Date, which Amended Schedule shall be Filed with the Bankruptcy Court; provided, that if any alteration, amendment, modification, or supplement to the Amended Rejected Executory Contracts and Unexpired Leases Schedule and/or the Amended Assumed Executory Contract/Unexpired Lease Schedule extends the time to reject any Unexpired Leases of nonresidential real property beyond a deadline established by the Bankruptcy Court under section 365(d)(4) of the Bankruptcy Code, such alteration, amendment, modification, or supplement shall be made only upon prior written consent of the lessor of such Unexpired Lease of nonresidential real property.

78.    The Debtors or the Reorganized Debtors, as applicable, shall provide notice of any amendments to the Amended Rejected Executory Contracts and Unexpired Leases Schedule and/or the Amended Assumed Executory Contract/Unexpired Lease Schedules to the parties to the Executory Contracts or Unexpired Leases affected thereby, and such party will have fourteen (14) days following the notice of the Filing of such Amended Schedule to file an objection thereto.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption, assumption and assignment, or cure amount related thereto (if any) will be deemed to have assented to such assumption, assumption and assignment, or cure amount.  Notwithstanding anything in the Plan to the contrary, in the event that any Executory Contract or Unexpired Lease is removed from the Rejected Executory Contracts and Unexpired Leases Schedule after such 14-day deadline, a Cure Notice with respect to such Executory Contract or Unexpired Lease will be sent promptly to the counterparty thereof and a noticed hearing set to consider such objection.

79.     Subject to the Debtors' cure obligations, if any, under section 365 of the Bankruptcy Code, the assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including any defaults concerning a  provision restricting the change in control, composition of applicable governing bodies or ownership interest composition, or any other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the date that the Debtors assume (or assume and assign) such Executory Contract or Unexpired Lease.  Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.  Any disputed cure amount shall be determined in accordance with the procedures set forth in <u>Article V.C</u> and <u>V.D</u> of the Plan, and applicable bankruptcy and nonbankruptcy law.

80.     **Proofs of Claim with respect to Claims against any Debtor arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including this Confirmation Order) approving such rejection.**  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be disallowed upon an order of the Bankruptcy Court, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized Debtors, the Estates, or property of the foregoing parties, without the need for any objection by the Debtors or the Reorganized Debtors, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection

of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and

discharged, and be subject to the permanent injunction set forth in <u>Article VIII</u> of the Plan,

notwithstanding anything in the Schedules, if any, or a Proof of Claim to the contrary.  Claims

arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be

classified as General Unsecured Claims and shall be treated in accordance with <u>Article III.B.5</u> of

the Plan.

**N.     <u>Provisions Regarding Certain Executory Contract and Unexpired Lease Counterparties.</u>**

81.     <u>Chubb Insurance Contracts</u>.  Notwithstanding anything to the contrary in the Plan,

the Plan Supplement, this Confirmation Order, any other document related to any of the

foregoing, or any other Final Order of the Bankruptcy Court (including, without limitation, any

other provision that purports to be preemptory or supervening, grants an injunction or release,

confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases):

(a)     as of the Effective Date, each of the Debtors' insurance policies that have been issued (or provide coverage) at any time by ACE American Insurance Company and/or its affiliates and successors (collectively, and together with any third party administrator related thereto, the "<u>Chubb Companies</u>") to any of the Debtors (or any of their predecessors) and all agreements, documents, or instruments relating thereto (collectively, the "<u>Chubb Insurance Contracts</u>"), shall be deemed to have been assumed and assigned by the applicable Debtors to the applicable Reorganized Debtors pursuant to sections 105 and 365 of the Bankruptcy Code and <u>Article V</u> of the Plan, and the assumed Chubb Insurance Contracts shall re-vest in and be fully enforceable by and against the applicable Reorganized Debtors in accordance with their terms, regardless of whether obligations thereunder arise before or after the Effective Date, without the requirement or need for the Chubb Companies, in their capacity as issuers of/parties to any Chubb Insurance Contracts, and any respective predecessors and/or affiliates of any of these  to file a Proof of Claim, an Administrative Claim, a Cure Claim, or to object to any cure amount;

(b)     nothing shall (i) alter, modify, or otherwise amend the terms and conditions of (or the coverage provided by) any of the Chubb Insurance Contracts or (ii) shall affect, impair, or prejudice the rights of the Chubb Companies, the insureds, or the Debtors (or, after the Effective Date, the Reorganized Debtors) under the Chubb Insurance Contracts in any manner, and the Chubb Companies, the

insureds, and the Debtors (or, after the Effective Date, the Reorganized Debtors) shall retain all rights and defenses under the Chubb Insurance Contracts, and the Chubb Insurance Contracts shall apply to, and be enforceable by and against, the Chubb Companies, the insureds, and the Reorganized Debtors in the same manner and according to the same terms and practices applicable to the Debtors, as existed prior to the Effective Date;

(c)     as of the Effective Date, the automatic stay provided under section 362(a) of the Bankruptcy Code and the injunction set forth in <u>Article VIII.F</u> of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (i) claimants with valid workers' compensation claims or with valid direct action claims against the Chubb Companies under applicable non-bankruptcy law to proceed with their claims; (ii) the Chubb Companies to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) valid workers' compensation claims, (B) claims where a claimant asserts a direct claim against the Chubb Companies under applicable non-bankruptcy law, or a Final Order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay or the injunction set forth in <u>Article VIII.F</u> of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; (iii) the Chubb Companies to draw against any or all of the collateral or security provided by or on behalf of the Debtors (or the Reorganized Debtors, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and the Reorganized Debtors, as applicable) and/or apply such proceeds to the obligations of the Debtors (and the Reorganized Debtors, as applicable) under the applicable Chubb Insurance Contracts, in such order as the Chubb Companies may determine; and (iv) the Chubb Companies to cancel any Chubb Insurance Contracts, and take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the Chubb Insurance Contracts; and

(d)     for the avoidance of doubt, (i) as of the Effective Date, all rights and obligations under the Chubb Insurance Contracts shall be determined under the applicable Chubb Insurance Contracts or applicable non-bankruptcy law, and (ii) nothing creates or is intended to create a right, claim or cause of action against any of the Debtors (or, after the Effective Date, any Reorganized Debtor) that does not otherwise exist under the Chubb Insurance Contracts or applicable non-bankruptcy law; provided, however, that the Chubb Companies shall not be permitted to cancel any Chubb Insurance Contracts (or take any actions related to such cancellation) solely based on the Debtors' filing of the Chapter 11 Cases.

## O.   <u>Exit ABL Facility.</u>

82.     The Exit ABL Facility (including the transactions contemplated by the Exit ABL Commitment Documents), and all agreements and other documents to be executed or delivered

in connection therewith (including the Exit ABL Commitment Documents and the Exit ABL Facility Documents) are essential elements of the Plan, and entry into the Exit ABL Facility Documents and the Exit ABL Facility is in the best interests of the Debtors and their Estates and is necessary and appropriate for consummation of the Plan.  The Debtors have exercised sound business judgment in determining to enter into the Exit ABL Facility and have provided adequate notice thereof.  The terms and conditions of the Exit ABL Facility have been negotiated in good faith and at arm's length among the Debtors and the Exit ABL Agent and Exit ABL Lenders, without the intent to hinder, delay, or defraud any creditor of the Debtors, and any credit extended and loans made or deemed to be made to the Debtors, the Reorganized Debtors and/ or the New Cenveo Entities Loan Parties[5] by the Exit ABL Lenders, pursuant to the Exit ABL Commitment Documents and the Exit ABL Facility Documents, and any fees paid thereunder, are deemed to have been extended, issued, and made, or deemed made in good faith and for legitimate business purposes.  The terms and conditions of Exit ABL Commitment Documents as set forth in the Exit Financing Motion are fair and reasonable and are approved.

83.    In accordance with the terms of the Plan and, the Exit ABL Commitment Documents, subject to and upon the effectiveness of the Exit ABL Facility (as set forth herein and as provided in the Description of Restructuring Transactions), the DIP ABL Credit Facility Documents shall be amended and restated upon the execution, delivery, and the satisfaction or waiver of all conditions precedent to the Exit ABL Facility Agreement and the other Exit ABL Facility Documents in accordance with their terms.   All DIP ABL Credit Facility Claims (including any outstanding Letters of Credit, which shall be deemed to have been issued under

---

[5]    For purposes hereof, the term "New Cenveo Entities Loan Parties" means Cenveo Worldwide and the other New Cenveo Entities (other than Cenveo Enterprises, Inc.), as successors by merger to the Debtors, and the other Reorganized Debtors, are contemplated as being a Loan Party, under and as defined in the Exit ABL Facility Loan Documents and as a loan party to the Exit Term Facility Documents.

and in accordance with the terms of the Exit ABL Facility Documents, upon the effectiveness thereof), plus all accrued, unpaid interest, fees, costs and expenses, shall be ratified, assumed and automatically deemed included in, and part of the Obligations under and as defined in the Exit ABL Facility Documents.  Each of the Debtors, the Reorganized Debtors and/or the New Cenveo Entities Loan Parties are authorized (in accordance with the terms of the Exit ABL Commitment Documents), without further approval of the Bankruptcy Court, to enter into, execute, negotiate and deliver, or cause to be executed, negotiated and delivered, the Exit ABL Facility Agreement and the Exit ABL Facility Documents, including all related agreements, documents, instruments and certificates relating to the Exit ABL Facility.

84.     All actions to be taken, undertakings to be made, and indebtedness and other obligations to be incurred and performed, as the case may be, by the Debtors, the Reorganized Debtors and/or the New Cenveo Entities Loan Parties, as the case may be, in connection therewith or relating thereto, whether prior to, on, or following the Effective Date, including, without limitation, ratification, assumption and restatement of all of the DIP Credit Facility Claims into "Obligations" under and as defined in the Exit ABL Facility, and the incurrence of the loans under the Exit ABL Facility, the payment of all fees (including the Closing Fees, the Transaction Costs and the Structuring Fees to be paid at closing), indemnities, costs and expenses provided for therein or relating thereto, or otherwise), the provision of guarantees by the Debtors, the Reorganized Debtors, and/or the New Cenveo Entities Loan Parties (as the case may be), and the granting, including the ratification, assumption, amendment and restatement, of Liens on and security interests in, and pledges of, the assets of the Debtors, the Reorganized Debtors and/or the New Cenveo Entities Loan Parties (as the case may be) (including entry into, and filing of, any mortgages, security agreements or other instruments in favor of the Exit ABL

Agent to secure the indebtedness and other obligations under the Exit ABL Facility, are (i) hereby fully and finally approved; (ii) shall be deemed to be legal, valid, binding, and fully and unconditionally enforceable against the Debtors, the Reorganized Debtors and/or the New Cenveo Entities Loan Parties, and their Affiliates party thereto in accordance with their terms, without any further corporate or other action required by the Debtors, the Reorganized Debtors and/or the New Cenveo Entities Loan Parties, as the case may be; and (iii) in the case of Liens and security interests, shall be deemed fully and automatically perfected, subject only to such Liens and security interests as may be permitted under the Exit ABL Facility.

85.    Subject to and upon the effectiveness of the Exit ABL Facility (as set forth herein and as provided in the Description of Restructuring Transactions), and without further notice to any party, or further order or other approval of, or action by, the Court, or further act or action under applicable law, regulation, order or rule, or the vote, consent, authorization or approval of any Person, the Debtors, Reorganized Debtors and/or the New Cenveo Entities Loan Parties, shall be and hereby are authorized to enter into, incur indebtedness and other obligations under, and perform any duties and obligations under, the Exit ABL Facility Agreement and the other Exit ABL Facility Documents, and to execute and deliver the Exit ABL Facility Agreement and the other Exit ABL Facility Documents.  This Confirmation Order shall constitute (a) approval of the Exit ABL Facility Agreement and the other Exit ABL Facility Documents, all transactions contemplated thereby, and all actions to be taken, agreements and other documents to be entered into, undertakings to be made, and indebtedness and other obligations to be incurred by the Debtors, the Reorganized Debtors, and/or the New Cenveo Entities Loan Parties, or in connection therewith, including the payment of all fees, indemnities, costs and expenses provided for therein or relating thereto and (b) authorization for the Debtors, the Reorganized

Debtors and/or the New Cenveo Entities Loan Parties, to enter into, execute and deliver, incur and perform their obligations under, and grant Liens on and security interests in their assets and properties pursuant to, the Exit ABL Facility Agreement and the other Exit ABL Facility Documents.

86.    Subject to and upon the effectiveness of the Exit ABL Facility (as set forth herein and as provided in the Description of Restructuring Transactions) the Exit ABL Facility Documents and any Liens and security interests granted by the Debtors, the Reorganized Debtors and/or the New Cenveo Entities Loan Parties, in favor of the Exit ABL Agent under the Exit ABL Facility Agreement and other Exit ABL Facility Documents securing the indebtedness and all obligations of the Debtors and/or the New Cenveo Entities Loan Parties, under the Exit ABL Facility shall constitute the legal, valid, and binding obligations of the Debtors, the Reorganized Debtors, and/or the New Cenveo Entities Loan Parties, and shall be deemed to be validly created, attached and enforceable and perfected Liens on and security interests in the assets and properties of the Debtors, the Reorganized Debtors, and/or the New Cenveo Entities Loan Parties, and shall be fully and unconditionally enforceable in accordance with their respective terms and shall be, and hereby are, not subject to recharacterization or equitable subordination or avoidance for any purposes whatsoever, and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any other applicable nonbankruptcy law. The Exit ABL Facility shall be deemed to be reasonable and to have been entered into in good faith, for reasonably equivalent value, for legitimate business purposes, and as an inducement to the Exit ABL Agent and Exit ABL Lenders to extend credit thereunder.  The priorities of the Liens and security interests granted pursuant to, or in connection with, the Exit ABL Facility Documents shall be as set forth in the Exit ABL Facility Agreement, the other Exit ABL Facility

Documents, and an intercreditor agreement, satisfactory to each of the Exit ABL Agent, and the Exit ABL Lenders, the Exit Term Agent and the Requisite Exit Term Lenders.  Upon the effectiveness of the Exit ABL Facility (as set forth herein and as provided in the Description of Restructuring Transactions), all of the Liens and security interests to be granted in accordance with the Exit ABL Facility Agreement and the other Exit ABL Facility Documents shall be legal, valid, binding and fully enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit ABL Facility Agreement and the other Exit ABL Facility Documents.  The Debtors, the Reorganized Debtors, and/or the New Cenveo Entities Loan Parties granting such Liens and security interests are hereby authorized and directed to make all filings and recordings, and to obtain any governmental approvals and consents necessary, desirable or reasonably required by the Exit ABL Agent to establish, perfect, and/or evidence such Liens and security interests under the provisions of the applicable state, provincial, federal or other law (whether domestic or foreign) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary or desirable under applicable law, or reasonably required by the Exit ABL Agent, to give notice of such Liens and security interests to third parties.  Notwithstanding anything to the contrary in this Confirmation Order or the Plan, on and after the Effective Date, the Court's retention of jurisdiction shall not govern the enforcement of the Exit ABL Facility Documents or any other documents executed in connection with the Exit ABL Credit Facility or any rights or remedies related thereto or exercised in connection therewith.

87.    Without limiting the foregoing, upon the effectiveness of the Exit ABL Facility (as set forth herein and as provided in the Description of Restructuring Transactions), all of the Liens and security interests to be granted in accordance with the Exit ABL Facility Agreement

and the other Exit ABL Facility Documents shall be legal, valid, binding, and fully enforceable Liens on, and security interests in, the Collateral granted thereunder and shall be valid, binding, and enforceable against, and obligations of, each of the Debtors, the Reorganized Debtors and/or the New Cenveo Entities Loan Parties, in accordance with the terms of the Exit ABL Facility Agreement and the other Exit ABL Facility Documents.

P.      **Exit Term Facility.**

88.      The Plan is hereby amended such that the term "Exit Term Facility" shall refer only to a term loan facility described in clause (b) of the definition of "Exit Term Facility" as defined in the Plan.

89.      The Exit Term Facility (including the transactions contemplated by the Exit Term Commitment Documents), and all agreements and other documents to be executed or delivered in connection therewith (including the Exit Term Commitment Documents and the Exit Term Facility Documents) are essential elements of the Plan, and entry into the Exit Term Facility Documents and the Exit Term Facility is in the best interests of the Debtors and their Estates and is necessary and appropriate for consummation of the Plan.  The Debtors have exercised sound business judgment in determining to enter into the Exit Term Facility and have provided adequate notice thereof.  The terms and conditions of the Exit Term Facility have been negotiated in good faith and at arm's length among the Debtors and the Exit Term Agent and Exit Term Lenders, without the intent to hinder, delay, or defraud any creditor of the Debtors, and any credit extended and loans made or deemed to be made to the Debtors, the Reorganized Debtors and/ or the New Cenveo Entities Loan Parties by the Exit Term Lenders, pursuant to the Exit Term Commitment Documents and the Exit Term Facility Documents, and any fees paid thereunder, are deemed to have been extended, issued, and made, or deemed made in good faith

and for legitimate business purposes. The terms and conditions of Exit Term Commitment Documents as set forth in the Exit Financing Motion are fair and reasonable and are approved.

90.    In accordance with the terms of the Plan and, the Exit Term Commitment Documents, subject to and upon the effectiveness of the Exit Term Facility (as set forth herein and as provided in the Description of Restructuring Transactions), the DIP Term Facility Documents shall be amended and restated upon the execution, delivery, and the satisfaction or waiver of all conditions precedent to the Exit Term Facility Agreement and the other Exit Term Facility Documents in accordance with their terms. All DIP Term Credit Facility Claims (including any outstanding Letters of Credit, which shall be deemed to have been issued under and in accordance with the terms of the Exit Term Facility Documents, upon the effectiveness thereof), plus all accrued, unpaid interest, fees, costs and expenses, shall be ratified, assumed and automatically deemed included in, and part of the Obligations under and as defined in the Exit Term Facility Documents. Each of the Debtors, the Reorganized Debtors and/or the New Cenveo Entities Loan Parties are authorized (in accordance with the terms of the Exit Term Commitment Documents), without further approval of the Bankruptcy Court, to enter into, execute, negotiate and deliver, or cause to be executed, negotiated and delivered, the Exit Term Facility Agreement and the Exit Term Facility Documents, including all related agreements, documents, instruments and certificates relating to the Exit Term Facility.

91.    All actions to be taken, undertakings to be made, and indebtedness and other obligations to be incurred and performed, as the case may be, by the Debtors, the Reorganized Debtors and/or the New Cenveo Entities Loan Parties, as the case may be, in connection therewith or relating thereto, whether prior to, on, or following the Effective Date, including, without limitation, the incurrence of the loans under the Exit Term Facility, the payment of all

other amounts, indemnities, costs and expenses provided for therein or relating thereto, or otherwise), the provision of guarantees by the Debtors, the Reorganized Debtors, and/or the New Cenveo Entities Loan Parties (as the case may be), and the granting of Liens on and security interests in, and pledges of, the assets of the Debtors, the Reorganized Debtors and/or the New Cenveo Entities Loan Parties (as the case may be) (including entry into, and filing of, any mortgages, security agreements or other instruments in favor of the Exit Term Agent to secure the indebtedness and other obligations under the Exit Term Facility, are (i) hereby fully and finally approved; (ii) shall be deemed to be legal, valid, binding, and fully and unconditionally enforceable against the Debtors, the Reorganized Debtors and/or the New Cenveo Entities Loan Parties, and their Affiliates party thereto in accordance with their terms, without any further corporate or other action required by the Debtors, the Reorganized Debtors and/or the New Cenveo Entities Loan Parties, as the case may be; and (iii) in the case of Liens and security interests, shall be deemed fully and automatically perfected, subject only to such Liens and security interests as may be permitted under the Exit Term Facility.

92.    Subject to and upon the effectiveness of the Exit Term Facility (as set forth herein and as provided in the Description of Restructuring Transactions), and without further notice to any party, or further order or other approval of, or action by, the Court, or further act or action under applicable law, regulation, order or rule, or the vote, consent, authorization or approval of any Person, the Debtors, Reorganized Debtors and/or the New Cenveo Entities Loan Parties, shall be and hereby are authorized to enter into, incur indebtedness and other obligations under, and perform any duties and obligations under, the Exit Term Facility Agreement and the other Exit Term Facility Documents, and to execute and deliver the Exit Term Facility Agreement and the other Exit Term Facility Documents.  This Confirmation Order shall constitute (a) approval

of the Exit Term Facility Agreement and the other Exit Term Facility Documents, all transactions contemplated thereby, and all actions to be taken, agreements and other documents to be entered into, undertakings to be made, and indebtedness and other obligations to be incurred by the Debtors, the Reorganized Debtors, and/or the New Cenveo Entities Loan Parties, or in connection therewith, including the payment of all fees, indemnities, costs and expenses provided for therein or relating thereto and (b) authorization for the Debtors, the Reorganized Debtors and/or the New Cenveo Entities Loan Parties, to enter into, execute and deliver, incur and perform their obligations under, and grant Liens on and security interests in their assets and properties pursuant to, the Exit Term Facility Agreement and the other Exit Term Facility Documents.

93.    Subject to and upon the effectiveness of the Exit Term Facility (as set forth herein and as provided in the Description of Restructuring Transactions) the Exit Term Facility Documents and any Liens and security interests granted by the Debtors, the Reorganized Debtors and/or the New Cenveo Entities Loan Parties, in favor of the Exit Term Agent under the Exit Term Facility Agreement and other Exit Term Facility Documents securing the indebtedness and all obligations of the Debtors and/or the New Cenveo Entities Loan Parties, under the Exit Term Facility shall constitute the legal, valid, and binding obligations of the Debtors, the Reorganized Debtors, and/or the New Cenveo Entities Loan Parties, and shall be deemed to be validly created, attached and enforceable and perfected Liens on and security interests in the assets and properties of the Debtors, the Reorganized Debtors, and/or the New Cenveo Entities Loan Parties, and shall be fully and unconditionally enforceable in accordance with their respective terms and shall be, and hereby are, not subject to recharacterization or equitable subordination or avoidance for any purposes whatsoever, and shall not constitute preferential transfers or

fraudulent conveyances under the Bankruptcy Code or any other applicable nonbankruptcy law. The Exit Term Facility shall be deemed to be reasonable and to have been entered into in good faith, for reasonably equivalent value, for legitimate business purposes, and as an inducement to the Exit Term Agent and Exit Term Lenders to extend credit thereunder.  The priorities of the Liens and security interests granted pursuant to, or in connection with, the Exit Term Facility Documents shall be as set forth in the Exit Term Facility Agreement, the other Exit Term Facility Documents, and an intercreditor agreement, satisfactory to each of the Exit ABL Agent, and the Exit ABL Lenders, the Exit Term Agent and the Exit Term Lenders.   Upon the effectiveness of the Exit Term Facility (as set forth herein and as provided in the Description of Restructuring Transactions), all of the Liens and security interests to be granted in accordance with the Exit Term Facility Agreement and the other Exit Term Facility Documents shall be legal, valid, binding and fully enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Term Facility Agreement and the other Exit Term Facility Documents.  The Debtors, the Reorganized Debtors, and/or the New Cenveo Entities Loan Parties granting such Liens and security interests are hereby authorized and directed to make all filings and recordings, and to obtain any governmental approvals and consents necessary, desirable or reasonably required by the Exit Term Agent to establish, perfect, and/or evidence such Liens and security interests under the provisions of the applicable state, provincial, federal or other law (whether domestic or foreign) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary or desirable under applicable law, or reasonably required by the Exit Term Agent, to give notice of such Liens and security interests to third parties.  Notwithstanding anything to the contrary in this Confirmation Order or the Plan, on and after the Effective Date, the Court's retention of jurisdiction shall not

govern the enforcement of the Exit Term Facility Documents or any other documents executed in connection with the Exit Term Credit Facility or any rights or remedies related thereto or exercised in connection therewith.

94.     Without limiting the foregoing, upon the effectiveness of the Exit Term Facility (as set forth herein and as provided in the Description of Restructuring Transactions), all of the Liens and security interests to be granted in accordance with the Exit Term Facility Agreement and the other Exit Term Facility Documents shall be legal, valid, binding, and fully enforceable Liens on, and security interests in, the Collateral granted thereunder and shall be valid, binding, and enforceable against, and obligations of, each of the Debtors, the Reorganized Debtors and/or the New Cenveo Entities Loan Parties, in accordance with the terms of the Exit Term Facility Agreement and the other Exit Term Facility Documents.

95.     Notwithstanding the entry of this Confirmation Order, from the Confirmation Date through the Effective Date (the "Pre-Consummation Period"), including without limitation, the substantial consummation of the Restructuring Transactions, all of the Loans, Letters of Credit, and all other "Obligations" as defined in the DIP ABL Credit Facilities Documents, and all of the "Obligations" as defined in the DIP Term Loan Facilities Documents, in each case, as incurred during the Pre-Consummation Period, and all claims, liens, interest, rights, priorities, protections and remedies afforded to the DIP Agents and DIP Lenders in the Final DIP Order shall remain in full force and effect, and shall continue to constitute the legal, valid, binding and enforceable obligations of Debtors, Reorganized Debtors and/or New Cenveo Entities Loan Parties, which shall not be impaired, prejudiced or modified in any way at any time prior to the Effective Date.  Until such time as all of the conditions precedent to the effectiveness of the Exit Facilities Documents have been satisfied, including the occurrence of the Effective Date, the

rights and remedies of each of the DIP Agents and DIP Lenders under the DIP Facilities shall remain in full force and effect and the consummation of the Merger and the effectiveness of the Exit Facilities Documents shall be deemed to have not occurred.

96.    For the avoidance of doubt, prior to the effectiveness of the Exit ABL Facility Agreement, the DIP ABL Lenders and the DIP Term Lenders shall have the rights and remedies available to the DIP ABL Lenders and the DIP Term Lenders, respectively, under the DIP Financing Orders and the DIP Credit Agreements (as applicable), and the relative ranking and priorities between the DIP ABL Facility, on the one hand, and the DIP Term Loan Facility or the Exit Term Facility (as the case may be), on the other hand, shall be consistent with the ranking and priorities between the DIP ABL Facility and the DIP Term Facility set forth in the Final DIP Order.

97.    Unless provided for elsewhere in this Confirmation Order, upon the Effective Date, the DIP Agents and the DIP Lenders shall be released from any and all liability, responsibility, and/or obligation to hold, reserve for, or otherwise fund or ensure the funding of the Carve-Out (as defined in the Final DIP Order), or any other expenses included within the Carve-Out and from any obligation, responsibility or liability to the Debtors, any of the Professionals (as defined in the Final DIP Order) or any other third party to pay, fund or otherwise satisfy the fees and expenses of such Professionals.

**Q.    Exemption from Transfer Taxes.**

98.    Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes, equity securities, instruments or documents under, or in connection with, the Plan and the Plan Documents (including, without limitation, the issuance of Reorganized Cenveo Equity Interests), the assignment or surrender of any lease or sublease, the creation of any mortgage, deed of trust, Lien, pledge or other security interest (including, without limitation, the

Liens and security interests created or evidenced (or purported to be created or evidenced) by the security agreements, pledge agreements, collateral assignments, control agreements, mortgages, deeds, financing statements and other documents, agreements and instruments executed and/or delivered in connection with the Exit ABL Facility or the Exit Term Facility or the making, assignment or delivery of any lease, sublease, deed or any other instrument of transfer under, in furtherance of, or in connection with the Plan and the Plan Documents, including any deeds, bills of sale, assignments, mortgages, deeds of trust or similar documents executed in connection with any assets transferred under the Plan or the Plan Documents, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax nor any Uniform Commercial Code filing or recording fee or similar or other governmental assessment, pursuant to and to the fullest extent permitted by section 1146(a) of the Bankruptcy Code.  Upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

R.    **Governmental Approvals Not Required.**

99.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan, the Plan Documents, the Restructuring Transactions, or this Confirmation Order.

100.    To the extent certain of the Debtors' Environmental Permits[6] are not transferred to the Reorganized Debtors as of the Effective Date, the Reorganized Debtors are authorized to conduct their business operations as of and after the Effective Date on an interim basis pursuant to the Environmental Permits issued in the name of, and for the benefit of, the Debtors until such time as the Environmental Permits have been transferred to and issued in the name of the Reorganized Debtors, and the Reorganized Debtors shall comply with all applicable terms and conditions of the Environmental Permits as of and after the Effective Date.

## S.    Filing and Recording.

101.    This Confirmation Order is, and shall be, binding upon and shall govern the acts of all persons or entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.  Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, advisable, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any stamp tax or similar tax imposed by state or local law.

## T.    Tax Withholding.

102.    In accordance with the provisions of the Plan and subject to Article VI.G of the Plan, to the extent applicable, the Distribution Agent, the Debtors and the Reorganized Debtors

---

[6]    "Environmental Permits" means all permits, licenses, registrations, authorizations and other approvals required for the operation of the business of Debtors (and, after the Effective Date, the Reorganized Debtors) and issued pursuant to Environmental Law.

shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Debtors shall consult and cooperate with the Requisite First Lien Creditors in good faith to structure the Restructuring Transactions in a manner that will mitigate or eliminate any withholding obligations.  Notwithstanding any provision in the Plan to the contrary, the Distribution Agent, the Debtors and the Reorganized Debtors shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including (a) liquidating a portion of any distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes and (b) withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate, including using commercially reasonable efforts to obtain, if such information is not already in the possession of the Reorganized Debtors, the Debtors or the Distribution Agent, (i) in the case of a U.S. Holder, a properly executed IRS Form W-9 and, (ii) in the case of a non-U.S. Holder, a properly executed applicable IRS Form W-8 and any other forms required by any applicable law (or in each of the cases of clauses (i) and (ii) above, such Holder otherwise establishes eligibility for an exemption).

U.    **Global Settlement.**

103.    Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, the Global Settlement as provided under the Plan includes, among other things, subject in all respects to the language of the Plan,  (a) assumption of the U.S. Qualified Pension Plan obligations; (b) assumption of the unexpired Collective Bargaining Agreements; (c) assumption of the Citibank Sublease; (d) establishment of the General Unsecured Claims Cash Pool, which provides for an enhanced Cash recovery to Holders of Allowed General Unsecured Claims;

(e) appointment of the Claims Oversight Monitor; (f) payment of certain reasonable and documented fees and expenses incurred by Brigade and its professionals, as set forth in clause (ii) of the definition of "Transaction Expenses"; (g) payment of the Stipulated Administrative Expense Settlement Claims; (h) waiver of the deficiency claim for the Holders of the First Lien Notes Claims; (i) waiver and release of all Avoidance Actions arising under chapter 5 of the Bankruptcy Code or any comparable action arising under applicable non-bankruptcy law against trade vendors and non-insider landlords of the Debtors; (j) the Committee's support of the Plan and encouragement of creditors through the Committee Support Letter (as defined in the Disclosure Statement) to vote to accept the Plan; (k) the cessation of the Debtors' and the Committee's respective independent Investigations, and the submission by the Examiner of a report after reviewing the Debtors' and Committees' respective draft reports; (l) Debtor Releases in favor of Mr. Robert G. Burton, Sr. and related family members and their respective Affiliates; and (n) the right for Holders of Second Lien Notes Claims to receive and retain proceeds of cash collateral under the Plan notwithstanding the applicability of any of the Intercreditor Agreements.

104.    The Global Settlement (a) is a permitted means of implementing the Plan pursuant to section 1123(b) of the Bankruptcy Code; (b) is an integral element of the transactions incorporated into the Plan; (c) confers material benefits on, and are in the best interests of, the Debtors, the Estates, and their creditors; (d) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; (e) is fair and equitable and represent a resolution within the range of reasonableness; and (f) is consistent with sections 105, 1123, and 1129 of the Bankruptcy Code,

other provisions of the Bankruptcy Code, Bankruptcy Rule 9019, and other applicable law.  The

Global Settlement as reflected in the Plan is therefore approved.

## V.    Discharge of Claims and Termination of Interests; Compromise and Settlement of Claims, Interests, and Controversies.

105.    Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise

specifically provided in the Plan, this Confirmation Order, or in any contract, instrument, or

other agreement or document created pursuant to the Plan, including the Plan Documents, the

distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction,

settlement, discharge, and release, effective as of the Effective Date, of Claims (including any

Intercompany Claims resolved or compromised after the Effective Date by the Reorganized

Debtors), Interests, and causes of action of any nature whatsoever, including any interest accrued

on Claims or Interests from and after the Petition Date, whether known or unknown, against,

liabilities of, liens on, obligations of, rights against, and interests in, the Debtors or any of their

assets or properties, regardless of whether any property shall have been distributed or retained

pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and

causes of action that arose before the Effective Date, any contingent or non-contingent liability

on account of representations or warranties issued on or before the Effective Date, and all debts

of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case

whether or not:  (a) a Proof of Claim based upon such debt, right, or Interest is Filed or deemed

Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such

debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the

Holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by

the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately

before, or on account of, the filing of the Chapter 11 Cases shall be deemed cured (and no longer

continuing) as of the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests, subject to the Effective Date occurring.

106.    Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided pursuant to the Plan, on the Effective Date, the provisions of the Plan and the Global Settlement shall constitute a good faith compromise and settlement of all Claims (including those subject to the Investigation), causes of action, Interests, controversies, or issues relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest, or any distribution to be made on account of such Allowed Claim or Allowed Interest, all as reflected in the Plan and the Global Settlement.

107.    Upon the Effective Date, except as otherwise provided by the Plan or this Confirmation Order, all ongoing litigation against the Debtors, including any contested matters in the Chapter 11 Cases (including the Investigation) pending as of the Confirmation Date, shall be deemed dismissed with prejudice.

## W.    The Releases, Injunction, Exculpation, and Related Provisions Under the Plan.

108.    The releases, injunctions, exculpations, and related provisions set forth in Article VIII of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Court or any other party.  Notwithstanding anything to the contrary in this Confirmation Order or the Plan, the release, discharge and injunction provisions of the Confirmation Order and the Plan shall not waive, discharge, release, impair or otherwise affect any debts or other obligations of any non-Debtor Subsidiary of any Debtor, Reorganized Debtor, and/or any of their respective Estates to any Debtor, Reorganized Debtor, and/or any of their respective Estates.

109.    Pursuant to Bankruptcy Rule 3020(c)(1), the following provisions of the Plan will

be immediately effective on the Effective Date:

**Article VIII. Section F:    EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN DOCUMENTS OR THIS CONFIRMATION ORDER, OR FOR OBLIGATIONS ISSUED OR REQUIRED TO BE PAID PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO THE PLAN, DISCHARGED PURSUANT TO THE PLAN, OR ARE SUBJECT TO EXCULPATION PURSUANT TO THE PLAN, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, REORGANIZED DEBTORS, THE RELEASED PARTIES, OR THE EXCULPATED PARTIES:  (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH ENTITY HAS EITHER (1) TIMELY FILED A PROOF OF CLAIM ASSERTING A RIGHT OF SETOFF OR RECOUPMENT, OR (2) TIMELY ASSERTED SUCH SETOFF OR RECOUPMENT RIGHT IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR RECOUPMENT, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF OR RECOUPMENT PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO**

**ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.**

110.    Notwithstanding anything to the contrary in this Confirmation Order or the Plan (including the Releases set forth in the Plan), nothing contained in this Confirmation Order or the Plan shall impair, effect, modify, or release (A) the Exit Facilities, or (B) (a) postpetition Administrative Claims that are (1) Professional Fee Claims (subject to Allowance pursuant to the Plan and/or the Interim Compensation Order if such Claims have not already been allowed as of the Effective Date) or (2) Administrative Claims that may be Allowed for which requests for payment are timely Filed and served on the Reorganized Debtors pursuant to the procedures specified in this Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date, (b) Administrative Claims that are not required to be Filed and served on the Reorganized Debtors in accordance with Article II.A of the Plan and, in each case, that may be allowed, including, but not limited to, (1) Administrative Expense Claims incurred by the Estates in the ordinary course of business after the Petition Date, which are required, pursuant to the Plan, to be paid by the Debtors or the Reorganized Debtors, as applicable, in accordance with the terms and conditions of the particular transaction giving rise to such Claim in the ordinary course as set forth in Article II.A of the Plan, (2) in accordance with the Claims Bar Date Order, a Claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code, asserted in accordance with the Claims Bar Date Order, or (c) the Stipulated Administrative Expense Settlement Claims.

111.    The definition of "Administrative Claims Bar Date" as defined in the Plan is amended as follows: "*Administrative Claims Bar Date*" means the first Business Day that is 60 days following the Effective Date, except as specifically set forth in the Plan or a Final Order, including the Claims Bar Date Order, provided, however, that the following Entities shall not be

required to file claims by the Administrative Claims Bar Date: (a) Holders of Professional Fee

Claims, (b) Holders of Administrative Claims not required to File and serve on the Reorganized

Debtors requests for payment of Allowed Administrative Claims in accordance with <u>Article II.A</u>

of the Plan, including, but not limited to, Allowed or allowable Administrative Expense Claims

incurred by the Estates in the ordinary course of business after the Petition Date, which are

required, pursuant to the Plan, to be paid by the Debtors or the Reorganized Debtors, as

applicable, in accordance with the terms and conditions of the particular transaction giving rise

to such Claim in the ordinary course, (c) pursuant to the Claims Bar Date Order, any Holder of a

Claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an expense of

administration incurred in the ordinary course, or (d) Holders of the Stipulated Administrative

Expense Settlement Claims.

112.    <u>Article VIII.E</u> of the Plan is modified by the addition of the following language at

the end of that section:

**NOTWITHSTANDING THE FOREGOING OR ANYTHING TO THE CONTRARY IN THE CONFIRMATION ORDER OR THE PLAN, SOLELY WITH RESPECT TO EXCULPATED PARTIES THAT ARE NON-ESTATE FIDUCIARIES, THIS <u>ARTICLE VIII.E</u> WILL NOT APPLY TO ANY ENTITIES THAT TIMELY AND VALIDLY SUBMITTED A DULY COMPLETED OPT-OUT FORM IN ACCORDANCE WITH THE DISCLOSURE STATEMENT ORDER; PROVIDED, HOWEVER, THAT THIS PROVISO IS NOT INTENDED TO AND SHALL NOT IMPAIR OR OTHERWISE LIMIT ANY EXCULPATION RIGHTS OF (I) ANY PARTIES OTHERWISE PROVIDED FOR UNDER ANY AGREEMENTS TO WHICH THEY ARE PARTIES OR BENEFICIARIES (INCLUDING, WITHOUT LIMITATION, ANY INDENTURE) OR (II) EXCULPATED PARTIES THAT ARE ESTATE FIDUCIARIES (INCLUDING, WITHOUT LIMITATION, THE COMMITTEE AND THE COMMITTEE MEMBERS) AND WITH RESPECT TO SUCH ESTATE FIDUCIARIES, SUCH ESTATE FIDUCIARIES' OFFICERS, DIRECTORS, MANAGERS, PRINCIPALS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS,**

**CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, EACH IN THEIR CAPACITY AS SUCH.**

X.    **Assumption of Certain Executory Contracts and Leases**.

113.    Notwithstanding anything in this Confirmation Order or the Plan to the contrary: (a) the Stonebriar Lease, as defined in the *Objection of Stonebriar Commercial Finance LLC to Third Amended Joint Chapter 11 Plan of Reorganization of Cenveo, Inc.,* et al., *Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 574] ("Stonebriar Objection"), shall be deemed assumed as of the Effective Date; (b) the Stonebriar Lease may not be subsequently rejected pursuant to Article V.A of the Plan, or otherwise, in these Chapter 11 Cases; (c) the Cure Claim under the Stonebriar Lease shall be paid as follows: (i) February, 2018 rent of $326,197.56 shall be paid on, or as soon as reasonably practicable after, the Effective Date (but in no event later than 30 days after the Effective Date); (ii) all late fees accrued under the Stonebriar Lease prior to July 31, 2018, shall be deemed waived. This fully and finally resolves the Stonebriar Objection.

114.    The setoff rights of CapRealty 01-City of Industry, LLC ("CapRealty") are preserved pursuant to Article VI.J of the Plan. All provisions of that certain lease agreement, originally dated as of October 1, 1977 (as amended from time to time, the "Lease") for certain premises located at 705 N. Baldwin Park Boulevard, City of Industry, California remain in effect upon and after the assumption of the Lease. Nothing in this Confirmation Order or the Plan shall preclude either party to the Lease from seeking to enforce their respective rights under the terms and provisions of the Lease.

Y.    **Certain Government Matters.**

115.    As to any Governmental Unit, nothing in the Plan or this Confirmation Order shall limit or expand the scope of discharge, release, or injunction to which the Debtors or the

Reorganized Debtors are entitled to under the Bankruptcy Code. The discharge, release, and injunction provisions contained in the Plan and this Confirmation Order are not intended and shall not be construed to bar any Governmental Unit from, subsequent to entry of this Confirmation Order, pursuing any police or regulatory action.

116.    Accordingly, notwithstanding anything contained in the Plan or this Confirmation Order to the contrary, nothing in the Plan or this Confirmation Order shall discharge, release, impair, or otherwise preclude: (a) any liability to any Governmental Unit that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (b) any Claim of any Governmental Unit arising after the Confirmation Date; (c) any valid right of setoff or recoupment of any Governmental Unit against any of the Debtors; or (d) any liability of the Debtors or the Reorganized Debtors under police or regulatory statutes or regulations to any Governmental Unit as the owner, lessor, lessee, or operator of property that such entity owns, operates, or leases after the Confirmation Date. Nor shall anything in the Plan or this Confirmation Order:  (a) enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence; or (b) divest any court, commission, or tribunal of jurisdiction to determine whether any liabilities asserted by any Governmental Unit are discharged or otherwise barred by the Plan, this Confirmation Order, or the Bankruptcy Code; provided, that the Bankruptcy Court retains jurisdiction, but not exclusive jurisdiction, to determine whether environmental liabilities asserted by any Governmental Unit or tax liabilities asserted by the Internal Revenue Service are Claims that were discharged by the Plan, this Confirmation Order, or the Bankruptcy Code; provided, that, the foregoing shall not affect or otherwise impair any releases contained in that certain *Stipulation and Settlement Agreement, by and among the Debtors and the United States*

*of America*, as approved by the Court in the *Order Approving the Settlement Agreement By and Among Debtors and the United States of America* [Docket No. 624].

117.    Moreover, nothing in the Plan or this Confirmation Order shall release or exculpate any non-Debtor, including any Released Parties, from any liability to any Governmental Unit, including but not limited to any liabilities arising under the Internal Revenue Code, federal securities laws, the environmental laws, or the criminal laws against the Released Parties, nor shall anything in the Plan or this Confirmation Order enjoin any Governmental Unit from bringing any claim, suit, action or other proceeding against the Released Parties for any liability whatsoever; provided, however, that the foregoing sentence shall not (a) limit the scope of discharge granted to the Debtors under sections 524 and 1141 of the Bankruptcy Code or (b) diminish the scope of any exculpation to which any party is entitled under section 1125(e) of the Bankruptcy Code.

118.    Nothing contained in the Plan or this Confirmation Order shall be deemed to determine the tax liability of any person or entity, including but not limited to the Debtors and the Reorganized Debtors, nor shall the Plan or this Confirmation Order be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of the Plan, nor shall anything in the Plan or this Confirmation Order be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under 11 U.S.C. § 505.

119.    Promptly upon receipt of proof of payment from the Debtors or the Reorganized Debtors, as applicable, of all outstanding accrued and unpaid contribution payments related to the U.S. Qualified Pension Plans, PBGC will file notices of withdrawal on account of each of the statutory liens arising under 26 U.S.C. § 430(k) (collectively, the "PBGC Liens").

Notwithstanding anything contained in the Plan or this Confirmation Order to the contrary, including the Debtor Release and the Third Party Release provided by <u>Articles VIII.C</u> and <u>VII.D</u> of the Plan, respectively, nothing in the Plan, this Confirmation Order, or section 1141 of the Bankruptcy Code shall be construed to discharge, release, or relieve any party from liabilities or requirements imposed under any applicable law or regulatory provision governing the U.S. Qualified Pension Plans or PBGC. PBGC and the U.S. Qualified Pension Plans will not be enjoined or precluded from enforcing such liability with respect to the U.S. Qualified Pension Plans as a result of any provision of the Plan, this Confirmation Order, or section 1141 of the Bankruptcy Code. All Proofs of Claim filed by PBGC shall be deemed withdrawn on the Effective Date.

120.    Notwithstanding anything to the contrary in this Confirmation Order or the Plan: (a) *ad valorem* tax liabilities owed by the Debtors to Bexar County, Dallas County, and Ellis County (collectively, the "<u>Texas Taxing Authorities</u>") for tax year 2018 shall be paid by the Reorganized Debtors in the ordinary course of business following the Effective Date as such tax debt becomes due and in the amounts billed in accordance with applicable Texas state law; (b) to the extent the Texas Taxing Authorities are entitled to liens, the Texas Taxing Authorities may assert such lien or liens in accordance with and subject to applicable Texas state law. The Debtors' and the Reorganized Debtors' (as applicable) rights and defenses under Texas state law and the Bankruptcy Code with respect to the foregoing are fully preserved.

**Z.    <u>Post-Confirmation Notices, Professional Compensation, and Bar Dates.</u>**

121.    In accordance with Bankruptcy Rules 2002 and 3020(c), no later than seven days (7) after the Effective Date, the Debtors shall cause a notice of Confirmation and occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit 2** (the "<u>Notice of Confirmation and Effective Date</u>") to be served by United States mail, first-class postage

prepaid, by hand, or by overnight courier service to all parties served with the Confirmation

Hearing Notice.  To supplement the notice procedures described in the preceding sentence, no

later than fourteen (14) days after the Effective Date, the Reorganized Debtors must cause the

Notice of Confirmation and Effective Date, modified for publication, to be published on one

occasion in the *Wall Street Journal*.  Mailing and publication of the notices described in this

paragraph in the time and manner set forth in this paragraph will be good, adequate, and

sufficient notice under the particular circumstances and in accordance with the requirements of

Bankruptcy Rules 2002 and 3020(c).  No further notice is necessary.

122.    The Notice of Confirmation and Effective Date will have the effect of an order of

the Court, will constitute sufficient notice of the entry of this Confirmation Order and occurrence

of the Effective Date to filing and recording officers, and will be a recordable instrument

notwithstanding any contrary provision of applicable non-bankruptcy law.

123.    **Professionals or other Entities asserting a Professional Fee Claim for services**

**rendered before the Effective Date must File an application for final allowance of such**

**Professional Fee Claim no later than 60 days after the Effective Date.**  The Reorganized

Debtors shall pay Professional Fee Claims in Cash in the amount this Court allows, including

from the Professional Fee Escrow, which the Reorganized Debtors will establish in trust for the

Professionals and fund with Cash equal to the Professional Fee Claims Estimate on the Effective

Date and otherwise in accordance with the Plan.

124.    Notwithstanding anything to the contrary herein, in accordance with the Plan and

the Restructuring Support Agreement, the Transaction Expenses shall, in each case, be Allowed

as Administrative Claims and shall be paid in full, in Cash on or before the Effective Date

without application or approval by the Bankruptcy Court.

125.    Notwithstanding anything to the contrary herein, the FILO Notes Professional Fees and Expense shall be paid in full, in Cash on the Effective Date in accordance with clause (c)(ii) of <u>Article III.B.4</u> of the Plan; *provided*, that the United States Trustee may object to the amounts sought as FILO Notes Professional Fees and Expenses solely with respect to the reasonableness of any such fees and expenses during the ten-day period following notice thereof.

126.    **Except as otherwise provided in the Plan, requests for payment of Administrative Claims, other than Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code which were required to be Filed by the Claims Bar Date, must be Filed and served on the Debtors or the Reorganized Debtors, as applicable, no later than the Administrative Claims Bar Date.**  Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims, but do not File and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Debtors or the Reorganized Debtors, as applicable, or any action by the Court.

**AA.    Payment of the Stipulated Administrative Expense Settlement Claims.**

127.    On the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall pay all then-outstanding unpaid Stipulated Administrative Expense Settlement Claims in accordance with <u>Article IV.T</u> of the Plan.  The Debtors, the Committee, and the U.S. Trustee may object to the amounts sought in the Stipulated Administrative Expenses Settlement Claims solely with respect to the reasonableness of any such fees and expenses during the ten-day period following notice thereof. Any objection that is not promptly resolved will be subject to resolution by the Bankruptcy Court pursuant to a Final Order.  All amounts not objected to in accordance

72

with this section shall be paid promptly and a reserve shall be established for any amounts objected to and subject to resolution by the Bankruptcy Court.  To the extent that any objection is sustained by the Bankruptcy Court pursuant to a Final Order, as soon as practicable following entry of such Final Order, the applicable party shall transfer Cash in the applicable amount back to the Reorganized Debtors. Nothing in the Plan or this Confirmation Order shall in any way affect or diminish the rights of the Second Lien Notes Indenture Trustee and the Unsecured Notes Indenture Trustee to assert the Second Lien Notes Indenture Trustee Charging Lien and the Unsecured Notes Indenture Trustee Charging Lien, respectively, against any distributions to Holders of Second Lien Notes Claims and Holders of Unsecured Notes Claims, respectively, with respect to any unpaid fees and expenses or other amounts payable to the Second Lien Notes Indenture Trustee and the Unsecured Notes Indenture Trustee pursuant to the Second Lien Notes Indenture and Unsecured Notes Indenture, respectively.

**BB.** **Release of Liens.**

128.    Except (a) with respect to the Liens securing (1) the Exit Facilities, (2) the PNCEF Claim, and (3) to the extent elected by the Debtors, with the consent of the Requisite First Lien Creditors, with respect to an Allowed Other Secured Claim in accordance with Article III.B of the Plan, or (b) as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any rights, interests, or property of the Estates shall be fully released and discharged, and the holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Debtors, the Reorganized Debtors and/or the New Cenveo Entities Loan Parties, as applicable, to reflect or effectuate such releases, and all of

the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

**CC.    DIP Facilities Claims.**

129.    All DIP Facilities Claims shall be deemed Allowed as of the Effective Date in an amount equal to the "Obligations" (as defined in the DIP ABL Facilities Documents) and the "Obligations" (as defined in the DIP Term Facilities Documents), including without limitation (a) the principal amount outstanding under the DIP Credit Agreements on such date, (b) all accrued and unpaid interest thereon to the date of payment and (c) all accrued and unpaid fees, expenses and noncontingent indemnification obligations payable under the DIP Credit Agreements and the DIP Financing Orders.

130.    Except to the extent that a Holder of an Allowed DIP ABL Credit Facility Claim agrees to a less favorable treatment with the consent of the Requisite First Lien Creditors, each Allowed DIP ABL Credit Facility Claim and all Liens securing such Allowed DIP ABL Credit Facility Claims shall (a) continue in full force and effect on and after the Effective Date, as amended and restated by and in accordance with the Exit ABL Facility Agreement and the Exit ABL Facility Documents, and nothing in the Plan, the other Plan Documents or this Confirmation Order shall or shall be construed to release, discharge, relieve, limit, or impair in any way the rights of any Holder of a DIP ABL Credit Facility Claim or any Lien securing such Claim, all of which shall be amended and restated by the Exit ABL Facility or (b) be indefeasibly paid in full, in Cash, by the Debtors or the Reorganized Debtors, as applicable, upon the effectiveness of the Exit ABL Facility (as set forth in the Description of Restructuring Transactions) with Cash proceeds from the Exit ABL Facility in accordance with the terms of the DIP ABL Credit Agreement and the Final DIP Order, including without limitation, the execution and delivery of a release agreement, on terms and conditions acceptable to the DIP ABL Agent

and the DIP ABL Lenders, and contemporaneously with the foregoing payment and delivery of

the release agreement, the DIP ABL Credit Facility and the "Loan Documents" referred to

therein shall be deemed canceled, all Liens on property of the Debtors and the Reorganized

Debtors arising out of or related to the DIP ABL Credit Facility shall automatically terminate,

and all Collateral (as defined in the DIP ABL Credit Agreement) subject to such Liens shall be

automatically released, in each case without further action by the ABL Agent or the DIP ABL

Lenders and all guarantees of the Debtors arising out of or related to the DIP ABL Credit Facility

Claims shall be automatically discharged and released, in each case without further action by the

ABL Agent or the DIP ABL Lenders pursuant to the terms of the DIP ABL Credit Facility.  The

ABL Agent and the DIP ABL Lenders shall take all actions to effectuate and confirm such

termination, release and discharge as reasonably requested by the Debtors or the Reorganized

Debtors.

131.    Clause (a) of <u>Article II.B.2</u> of the Plan is hereby deleted.

132.    Except to the extent that a Holder of an Allowed DIP Term Claim agrees to a less

favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in

exchange for, each Allowed DIP Term Claim and all Liens securing such Allowed DIP Term

Claims, on or prior to the Effective Date each Allowed DIP Term Claim shall be indefeasibly

paid in full, in Cash, by the Debtors or the Reorganized Debtors (as applicable) on or prior to the

Effective Date with Cash proceeds from the Exit Term Facility in accordance with the terms of

the DIP Term Credit Agreement and the Final DIP Order (which may include, without limitation,

the execution and delivery of one or more release agreements, in form and substance acceptable

to the DIP Term Agent and the DIP Term Lenders) and, contemporaneously with the foregoing

payment and delivery of the release agreement(s) to the DIP Term Agent, the DIP Term Facility

and the "Loan Documents" referred to therein shall be deemed fully and finally terminated, canceled, satisfied and discharged in full (except that any provisions thereof or rights thereunder which are expressed to survive the satisfaction, discharge, and termination of the DIP Term Facility shall continue as provided therein), all Liens on property of the Debtors and the Reorganized Debtors securing DIP Term Claims or otherwise arising out of or related to the DIP Term Facility shall automatically terminate, and all Collateral (as defined in the DIP Term Credit Agreement) subject to such Liens shall automatically be fully and finally released, in each case without further action by the DIP Term Agent, the DIP Term Lenders, or any other Person, and all guarantees provided by the Debtors and the Reorganized Debtors in respect of the DIP Term Claims shall automatically be fully and finally terminated, discharged, and released, in each case without further action by the DIP Term Agent, the DIP Term Lenders, or any other Person pursuant to the terms of the DIP Term Facility and the DIP Financing Orders.  The DIP Term Agent shall, at the Debtors' expense, take all actions to effectuate, evidence, and confirm, as applicable, such termination, release and discharge as are reasonably requested by the Debtors or the Reorganized Debtors.

**DD.**   **Intercompany Claims.**

133.    Notwithstanding anything to the contrary in this Confirmation Order or the Plan, any Claims of any non-Debtor Subsidiary against any Debtor, Reorganized Debtor, and/or any of their respective Estates shall be deemed an Intercompany Claim.

**EE.**   **Cancellation of Existing Securities and Agreements.**

134.    Except as otherwise provided in this Confirmation Order or in Article IV.H of the Plan, on the Effective Date (with respect to the Unsecured Notes Indenture and Unsecured Notes), on the later of the Effective Date and the date on which distributions are made pursuant to the Plan (other than with respect to the Unsecured Notes Indenture and the Unsecured Notes),

and as of such date and time reflected in the Description of the Restructuring Transactions (with respect to the ABL DIP Facility and the Term DIP Facility):  (a) subject to the satisfaction of the DIP Facilities Claims in accordance with Article II.B of the Plan, as modified by the terms of this Confirmation Order, the obligations of the Debtors under the the First Lien Notes Indenture, the FILO Notes Indenture, the Second Lien Notes Indenture, the Unsecured Notes Indenture, and any other certificate, equity security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such agreements, certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are reinstated or amended and restated pursuant to the Plan), shall be cancelled solely as to the Debtors and their Affiliates, and the Reorganized Debtors, the First Lien Notes Indenture Trustee, the FILO Notes Indenture Trustee, the Second Lien Notes Indenture Trustee, and the Unsecured Notes Indenture Trustee shall not have any continuing duties or obligations thereunder and shall be discharged; and (b) the obligations of the Debtors and their Affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically reinstated, amended and reinstated, or entered into pursuant to the Plan) shall be released and discharged.

135.    Until the satisfaction of the DIP Facilities Claims in accordance with <u>Article II.B</u> of the Plan, as modified by the terms of this Confirmation Order, the Plan Documents and the terms hereof, the DIP Credit Agreements and the DIP Financing Orders shall continue in full force and effect, including, for the purposes of:   (a) allowing the DIP Agents to receive distributions from the Debtors or the Reorganized Debtors, as applicable, under the Plan and to make further distributions to the Holders of the DIP Facilities Claims on account of such Claims, as set forth in <u>Article IV</u> of the Plan; (b) preserving the DIP Agents' and the DIP Lenders' right to all amounts due under the DIP Credit Agreements or DIP Financing Orders; and (c) preserving the DIP Agents' and the DIP Lenders' right to indemnification from the Debtors pursuant and subject to the terms of the DIP Financing Orders and the Plan; provided that any Claim or right to payment on account of such indemnification shall be an Administrative Claim regardless of whether such Claim or right to payment was filed by the Administrative Claim Bar Date.

136.    The First Lien Notes Indenture shall continue in effect solely for the purposes of: (a) allowing the First Lien Notes Indenture Trustee to receive distributions from the Debtors and the Reorganized Debtors, as applicable, and to make further distributions to the Holders of Claims in Class 3, and allowing such Holders to accept distributions, on account of such Claims, as set forth in <u>Article VI</u> of the Plan; (b) preserving the First Lien Notes Indenture Trustee's right to payment of its fees and expenses, and allowing the First Lien Notes Indenture Trustee to exercise its charging lien for the payment of its fees and expenses and for indemnification as against any money or property distributable to Holders, pursuant to the terms of the First Lien Notes Indenture and the Plan; (c) preserving the right of the First Lien Notes Indenture trustee to exculpation and indemnification from the Debtors pursuant and subject to the terms of the First

Lien Notes Indenture and the Plan; and (d) preserving the First Lien Notes Indenture Trustee's right to appear and be heard in the Chapter 11 Cases or in any other proceeding in the Bankruptcy Court to enforce any obligations owed to it under the Plan or Confirmation Order, provided that nothing set forth herein or in Article IV.H of the Plan shall affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any liability or expense to the Reorganized Debtors.

137.    The FILO Notes Indenture shall continue in effect solely for the purposes of: (a) allowing the FILO Notes Indenture Trustee to receive distributions from the Debtors or the Reorganized Debtors, as applicable, under the Plan and to make further distributions to the Holders of Allowed Claims in Class 4, and allowing such Holders to accept distributions, on account of such Claims, as set forth in Article VI of the Plan; (b) preserving the FILO Notes Indenture Trustee's right to payment of its fees and expenses, and allowing the FILO Notes Indenture Trustee to exercise its charging lien for the payment of its fees and expenses and for indemnification as against any money or property distributable to Holders, pursuant to the terms of the FILO Notes Indenture and the Plan; (c) preserving the right of the FILO Notes Indenture Trustee to exculpation and indemnification from the Debtors pursuant and subject to the terms of the FILO Notes Indenture and the Plan; and (d) preserving the FILO Notes Indenture Trustee's right to appear and be heard in the Chapter 11 Cases or in any other proceeding in the Bankruptcy Court to enforce any obligations owed to it under the Plan or Confirmation Order, provided that nothing set forth herein or in Article IV.H of the Plan shall affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any liability or expense to the Reorganized Debtors.

138.    The Second Lien Notes Indenture shall continue in effect solely for the purposes

of:   (a) allowing the Second Lien Notes Indenture Trustee to receive distributions from the

Debtors or the Reorganized Debtors, as applicable, under the Plan and to make further

distributions to the Holders of Allowed Claims in Class 5B, and allowing such Holders to accept

distributions, on account of such Claims, as set forth in Article VI of the Plan; (b) preserving the

Second Lien Notes Indenture Trustee's right to payment of its fees and expenses, and allowing

the Second Lien Notes Indenture Trustee to exercise its charging lien for the payment of its fees

and expenses and for indemnification as against any money or property distributable to Holders,

pursuant to the terms of the Second Lien Notes Indenture and the Plan; (c) preserving the right of

the Second Lien Notes Indenture Trustee to exculpation and indemnification from the Debtors

pursuant and subject to the terms of the Second Lien Notes Indenture and the Plan; and (d)

preserving the Second Lien Notes Indenture Trustee's right to appear and be heard in the Chapter

11 Cases or in any other proceeding in the Bankruptcy Court to enforce any obligations owed to

it under the Plan or Confirmation Order, provided that nothing herein or in Article IV.H of the

Plan shall affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation

Order, or the Plan, or result in any liability or expense to the Reorganized Debtors, except as

otherwise provided in Article IV.T or Article VI.C of the Plan.

139.    The Unsecured Notes Indenture shall continue in effect solely for the purposes of:

(a) allowing the Unsecured Notes Indenture Trustee to receive distributions from the Debtors

under the Plan and to make further distributions to the Holders of Allowed Claims in Class 5A,

and allowing such Holders to accept distributions, on account of such Claims, as set forth in

Article VI of the Plan; (b) preserving the Unsecured Notes Indenture Trustee's right to payment

of its fees and expenses, and allowing the Unsecured Notes Indenture Trustee to exercise its

charging lien for the payment of its fees and expenses and for indemnification as against any money or property distributable to Holders, pursuant to the terms of the Unsecured Notes Indenture and the Plan; (c) preserving the right of the Unsecured Notes Indenture Trustee to exculpation and indemnification from the Debtors pursuant and subject to the terms of the Unsecured Notes Indenture and the Plan; and (d) preserving the Unsecured Notes Indenture Trustee's right to appear and be heard in the Chapter 11 Cases or in any other proceeding in the Bankruptcy Court to enforce any obligations owed to it under the Plan or Confirmation Order, provided that nothing set forth herein or in Article IV.H of the Plan shall affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any liability or expense to the Reorganized Debtors, except as otherwise provided in Article IV.T or Article VI.C of the Plan.

140.    The foregoing provisos shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, the Plan or the Plan Documents or result in any expense or liability to the Debtors or the Reorganized Debtors, as applicable, except to the extent set forth in or provided for under the Plan and the Plan Documents; and nothing set forth herein or in Article IV.H of the Plan shall effect a cancellation of any Reorganized Cenveo Equity Interests, Intercompany Interests, or Intercompany Claims.  On the Effective Date (or as of such time otherwise provided in the Description of Restructuring Transactions), each Holder of a certificate or instrument evidencing a Claim that is discharged by the Plan shall be deemed to have surrendered such certificate or instrument in accordance with the applicable indenture or agreement that governs the rights of such Holder of such Claim.  Such surrendered certificate or instrument shall be deemed cancelled as set forth herein and in, and subject to the exceptions set forth in, Article IV.H of the Plan.

**FF.    <u>Return of Deposits.</u>**

141.    All utilities, including any Person who received a deposit or other form of "adequate assurance" of performance pursuant to section 366 of the Bankruptcy Code during the Chapter 11 Cases (collectively, the "<u>Deposits</u>"), whether pursuant to the *Order (I) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Utility Services, (II) Determining Adequate Assurance of Payment For Future Utility Services, and (III) Establishing Procedures for Determining Adequate Assurance of Payment* [Docket No. 174] or otherwise, including water, sewer service, telecommunications, data, cable, waste disposal, gas, electric, and other similar services, are directed to return such Deposits to the Reorganized Debtors, either by setoff against postpetition indebtedness or by Cash refund, on the Effective Date, and the Reorganized Debtors are also entitled to withdraw and keep any and all Deposits.

**GG.    <u>Effect of Confirmation Order on Other Orders.</u>**

142.    Unless expressly provided for herein, nothing in the Plan or this Confirmation Order shall affect any orders entered in the Chapter 11 Cases pursuant to section 365 of the Bankruptcy Code or Bankruptcy Rule 9019.

**HH.    <u>Inconsistency.</u>**

143.    In the event of any inconsistency between the Plan (including the Plan Supplement), the Plan Documents, the Disclosure Statement, and this Confirmation Order, the terms of the Plan be deemed to be modified by the terms of this Confirmation Order and this Order shall govern.  To the extent any provision of any final Plan Supplement document may conflict or is inconsistent with any provision in the Plan, the terms of the final Plan Supplement document shall govern and be binding and exclusive.

## II.   <u>Injunctions and Automatic Stay.</u>

144.   Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court, and extant on this Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect through and including the Effective Date.   All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

## JJ.   <u>Authorization to Consummate.</u>

145.   The Debtors are authorized to consummate the Plan and the Restructuring Transactions and finalize and implement the Plan Documents at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to consummation set forth in <u>Article IX</u> of the Plan.

## KK.   <u>Substantial Consummation.</u>

146.   On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code.

## LL.   <u>No Waiver.</u>

147.   The failure to specifically include any particular Plan Document or provision of the Plan or other Plan Document in this Confirmation Order will not diminish the effectiveness of such document or Plan provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety, the Plan Documents are approved in their entirety, and all are incorporated herein by this reference.

**MM.    Severability.**

148.    Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may not be deleted or modified except in accordance with Article X.A of the Plan; and (c) nonseverable and mutually dependent.

**NN.    Effect of Non-Occurrence of Effective Date.**

149.    If the Effective Date does not occur, then:  (a) the Plan shall be null and void in all respects; (b) any settlement, compromise, release, waiver, discharge, and exculpation embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void and without legal effect; and (c) nothing contained in the Plan or the Disclosure Statement shall:  (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors or any other Person or Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

**OO.    Debtors' Actions Post-Confirmation Through the Effective Date.**

150.    During the period from entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate their business as a debtor in possession, subject to the oversight of the Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of the Court that is in full force and effect.  During such period, the Debtors, the New Cenveo Entities and the Cenveo Acquiring Entities (including, in each case, each director and officer thereof, and any agent acting on their behalf, the "New Cenveo Entities Agents"), as applicable, are authorized to finalize the Plan

Documents and execute such documents, agreements, or filings that are contemplated by the Plan Supplement or the Restructuring Transactions without any further order of the Court or corporate action, and to take any actions necessary or advisable or appropriate to implement the documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement or the Restructuring Transactions.  The New Cenveo Entities Agents shall be exculpated with respect to any such action taken during such period, and the Debtors and the Reorganized Debtors shall indemnify and hold harmless each of the New Cenveo Entities Agents with respect to any such actions taken during such period, except for any such actions determined by Final Order to have constituted actual fraud, gross negligence or willful misconduct.

**PP.**    **Termination of Challenge Period.**

151.    Notwithstanding anything to the contrary herein, the Challenge Period (as defined in the *Third Joint Stipulation Extending the Committee's Challenge Period* [Docket No. 614] (the "Challenge Stipulation")) is terminated as of the date hereof, and the stipulations, admissions, findings, and releases contained in the DIP Orders shall be binding on the Debtors' estates and all parties in interest; provided that in the event that the Plan is confirmed on or before August 16, 2018, but the Effective Date has not yet occurred, then the Challenge Period Deadline shall automatically be extended through and including the Effective Date of the Plan.

**QQ.**    **Dissolution of the Committee.**

152.    Except to the extent provided in the Plan, on the Effective Date, the Committee shall dissolve automatically and the members thereof and their respective Professionals, including the Committee's Professionals, shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code; provided that following the Effective Date (a) the Committee's Professionals shall have standing and a right to be heard solely: (i) to pursue Professional Fee Claims in

accordance with Article II.C of the Plan and (ii) with respect to any appeal of the entry of this Confirmation Order or approval of the Plan, and (b) the Claims Oversight Monitor shall participate in the post-Effective Date reconciliation of General Unsecured Claims and Claims arising under section 503(b)(9) of the Bankruptcy Code, as more fully described in Article VII.A of the Plan. The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to the Committee after the Effective Date, except as otherwise provided in Article IV.T or Article VI.C of the Plan; provided that the reasonable and documented fees and expenses of the Claims Oversight Monitor shall be paid solely in accordance with Article VII.A.3 of the Plan.

**RR.     Continued Effect of Stays and Injunction.**

153.     Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or any order of the Court that is in existence on the Confirmation Date shall remain in full force and effect until the Effective Date.

**SS.     Conditions to Effective Date.**

154.     The Plan shall not become effective unless and until the conditions set forth in Article IX of the Plan have been satisfied or waived pursuant to Article IX.B of the Plan. Each of the conditions set forth in Article IX of the Plan is reasonably likely to be satisfied or waived in accordance with the Plan.

**TT.     Assumption of Restructuring Support Agreement.**

155.     Upon entry of this Confirmation Order, the Restructuring Support Agreement will be deemed assumed by the Debtors pursuant to section 365 of the Bankruptcy Code.

UU.    **Actual Knowledge.**

156.    Each Holder of shares of Reorganized Cenveo Equity Interests, whether such Holder acquired such shares of Reorganized Cenveo Equity Interests on the Effective Date or any time or from time to time thereafter, shall be deemed to have actual knowledge of the terms, provisions, restrictions and conditions set forth in the Governance Term Sheet Summary (including the key terms of the Reorganized Cenveo Organizational Documents and Shareholders Agreement for Reorganized Cenveo) attached as **Exhibit J** to the Plan Supplement (including, without limitation, the restrictions on the transfer of Reorganized Cenveo Equity Interests set forth therein) for all purposes of the Reorganized Cenveo Organizational Documents, the Shareholders Agreement, and applicable law (including, without limitation, the Delaware General Corporation Law and the Uniform Commercial Code as adopted and in effect in any applicable jurisdiction), whether or not any such Holder received a separate notice of such terms, provisions, restrictions and conditions.  Without limiting the foregoing, this Confirmation Order and the Plan (including the Plan Supplement) shall be deemed sufficient and adequate notice of such terms, provisions, restrictions and conditions to all Holders of Reorganized Cenveo Equity Interests, such that all such Holders shall be deemed to have actual knowledge thereof and shall be deemed to have acquired (whether on the Effective Date or from time to time thereafter) such  Reorganized Cenveo Equity Interests  subject to all such terms, provisions, restrictions, and conditions.  Further, it shall be a condition to the receipt of any Reorganized Cenveo Equity Interests that, prior to such receipt, each such recipient duly executes and delivers to the Debtors and counsel to the Ad Hoc First Lien Committee counter-signature pages to the Shareholders Agreement.

**VV.**    **Waiver of 14-Day Stay.**

157.    Notwithstanding any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), 6006(d), and 7062), this Confirmation Order is effective immediately and not subject to any stay, sufficient cause having been shown.

**WW.**    **Modification of Plan Supplement.**

158.    Subject to the terms of the Plan, this Confirmation Order and the Restructuring Support Agreement, the Debtors are authorized to modify and amend the Plan Supplement through and including the Effective Date, and to take all actions necessary and appropriate to effect the transactions contemplated therein through, including and following the Effective Date.

**XX.**    **Post-Confirmation Modification of the Plan.**

159.    The Debtors are hereby authorized to amend or modify the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code and Article X.A of the Plan, without further order of this Court.

**YY.**    **Final Order.**

160.    This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

**ZZ.**    **Local Bankruptcy Rules 3021-1(b) and 3022-1**

161.    Pursuant to Local Bankruptcy Rule 3021-1, the time table for achieving substantial consummation of the Plan and entry of a final decree closing the Chapter 11 Cases is as follows:

     a.    Substantial Consummation of the Plan. The Debtors anticipate that the Effective Date and substantial consummation of the Plan will occur in August or September 2018, or as soon as reasonably practicable thereafter.

     b.    Distributions. The Debtors or Reorganized Debtors, as applicable, in consultation with the Committee and the Claims Oversight Monitor, as applicable, anticipate completing the distributions required under the Plan on or as soon as reasonably

practicable after the Effective Date consistent with the provisions of <u>Article IV</u> of the Plan.

c.   <u>Resolution of Claims</u>.  The Debtors or Reorganized Debtors, as applicable, in consultation with the Committee and the Claims Oversight Monitor, as applicable shall resolve Disputed Claims against the Debtors' Estates consistent with the provisions of <u>Article VII</u> of the Plan.

d.   <u>Avoidance Actions</u>.  Pursuant to <u>Article IV.S</u> of the Plan, as of the Effective Date, all Avoidance Actions against (i) trade vendors and non-insider landlords of the Debtors and (ii) PNCEF, shall be waived by the Debtors and the Reorganized Debtors and their respective Estates.

e.   <u>Post-Confirmation Status Reports</u>. The Reorganized Debtors shall file post-Confirmation disbursement and status reports every six (6) months until the Chapter 11 Cases are closed by means of a final decree, converted to a case under chapter 7, or dismissed, whichever happens earlier.

f.   <u>Motion for Final Decree</u>.  Consistent with Bankruptcy Rule 3022 and Local Bankruptcy Rule 3022-1, within fourteen (14) days following the full administration of the Debtors' Estates, the Reorganized Debtors shall file, on notice to the United States Trustee, an application and a proposed order for a final decree.

## AAA.  <u>Retention of Jurisdiction</u>

162.   Notwithstanding the entry of this Confirmation Order, from and after the Effective Date, this Court shall, to the fullest extent legally permissible, retain exclusive jurisdiction over the Chapter 11 Cases and all matters arising under, arising out of, or related to, the Chapter 11 Cases, including all matters listed in <u>Article IX</u> of the Plan, as well as for the purposes set forth in section 1142 of the Bankruptcy Code.  To the extent it is not legally permissible for the Court to have exclusive jurisdiction over any of the foregoing matters, the Court shall have non-exclusive jurisdiction over such matters to the fullest extent legally permissible.  Notwithstanding anything to the contrary in this Confirmation Order or the Plan, from and after the Effective Date, the Court shall not retain jurisdiction over the Exit ABL Facility, the Exit Term Facility, any applicable intercreditor agreement, or the documents executed in connection therewith or any Liens, rights, or remedies related thereto, or the

Reorganized Cenveo Organizational Documents except to the extent that this Confirmation Order has been vacated or reversed, but instead, such enforcement shall be governed as set forth in the applicable Exit ABL Facility Documents, the Exit Term Facility Documents, any applicable intercreditor agreement, and the Reorganized Cenveo Organizational Documents, as applicable.

Dated:  White Plains, New York
        August 21, 2018

                        /s/Robert D. Drain
                        THE HONORABLE ROBERT D. DRAIN
                        UNITED STATES BANKRUPTCY JUDGE

## <u>Exhibit 1</u>

**Plan of Reorganization**

<u>**Exhibit 2**</u>

**Notice of Confirmation and Effective Date**

5392548.2